Wilson v. Parks 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 






NO. 3-91-232-CV






LYDIA MAE WILSON, CURTIS DALE WILSON,


ANGELA GALE WILSON KRAMM AND LILA WILSON,



 APPELLANTS


vs.





TEXAS PARKS AND WILDLIFE DEPARTMENT,



 APPELLEE




 




FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT



NO. 3801, HONORABLE ROBERT C. WRIGHT, JUDGE PRESIDING



 





 Two brothers, Wilford and Wilton Wilson, drowned while fishing in the Pedernales
River. Their widows, Lila Wilson and Lydia Mae Wilson, respectively, and children
(collectively, "Plaintiffs") sued the Texas Parks and Wildlife Department ("Department"),
appellee, claiming the Department's negligence caused the drowning deaths. Although the jury
found the Department was negligent, it failed to find that such negligence was a proximate cause
of the Wilson brothers' deaths. Based on the jury's findings, the trial court rendered a take-nothing judgment. On appeal, Plaintiffs raise eight points of error, including challenges to the
transfer of venue to Blanco County, the subsequent refusal to transfer venue out of Blanco
County, jury misconduct, and the sufficiency of the evidence. (1) We will affirm the trial court's
judgment.



FACTUAL AND PROCEDURAL BACKGROUND


 On May 16, 1987, the Wilson brothers, along with Wilford's adult son, Thomas
Wayne Wilson, arrived at Pedernales Falls State Park ("Park") in Blanco County to go fishing. 
The Park is owned and operated by the Department. The fishing party walked and waded across
one hundred yards of river bed to get to their desired fishing spot, Hugo Hole. Hugo Hole is near
but outside the boundary of the Park. By 4:00 p.m., the group was fishing from atop a rock
surrounded by water. At 8:00 p.m., the party was joined by Wes Carlson, Wilton's son-in-law,
and Eric Carlson, Wes Carlson's son. Shortly thereafter, the party noticed rising water and
attempted to get back to the bank of the river. Instead of wading to the north shore approximately
fifty yards away, the party attempted to retrace their steps to the south shore across one hundred
yards of forcefully flowing water. Wilton and Wilford were unable to cross the river and
drowned. Thomas Wayne Wilson, Wes Carlson, and Eric Carlson survived.

 Because of the danger of rapidly rising water, the Park is equipped with a flood
early warning system. This system has sensors upstream from the Park that detect and report
rises in the river. When the river reaches a certain level, the system triggers several sirens to
warn park patrons of the potential danger. These sirens, however, must be manually reset after
each alert. The sensors also send a message to a computer console at Park headquarters. This
enables park personnel to ensure the sirens are reset and verbally warn patrons of the impending
rise.

 At 4:24 p.m. on the day of the accident, the sensors reported a rise in the river that
should have triggered the sirens. However, the sirens had not been reset from their previous use
in February 1987 and, consequently, did not go off. Although the computer printout at Park
headquarters reported the rise, the park ranger on duty, Francis Ulrich, did not reset the sirens. 
Ulrich testified, however, that he told later patrons, including Wes Carlson, of an expected rise.

 Following the drowning deaths, the surviving wives and families brought suit in
Travis County claiming, in part, that the Department was negligent in its design of the early
warning system, maintenance of the system, and training of park personnel. Additionally, they
claimed the Department was vicariously liable for Ulrich's negligence in failing to take measures
to warn the fishermen. On motion of the Department, the Travis County district court transferred
venue from Travis County to Blanco County, the site of the drowning deaths.

 Plaintiffs later moved the Blanco County district court to transfer venue to another
county, claiming they could not receive a fair trial in Blanco County. The district court denied
this motion, and a jury trial was held in Blanco County. In answer to special issues, the jury
determined that the Department was negligent. However, the jury failed to find that this
negligence was a proximate cause of the Wilsons' deaths. Further, the jurors found that the
Wilsons themselves were negligent and that their own negligence was a proximate cause of their
deaths. Finally, they found that the Wilsons were not fishing on park premises. The trial court
rendered a take-nothing judgment based on these answers.



TRANSFER OF VENUE


 Plaintiffs first argue that the Travis County district court erred in transferring venue
from Travis County to Blanco County, because their negligent-design claim arose from actions
in Travis County. The Department responds that since venue was transferred to a county of
proper venue, reversal is not required even if venue was also proper in Travis County. Appellate
review of venue decisions is governed by section 15.064(b) of the Civil Practice and Remedies
Code, which provides: "On appeal from the trial on the merits, if venue was improper it shall
in no event be harmless error and shall be reversible error. In determining whether venue was or
was not proper, the appellate court shall consider the entire record, including the trial on the
merits." Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 1986). The plain language of
this section dictates the outcome if the appellate court determines, based upon the entire record,
that the trial was ultimately held in a county of improper venue. Where a cause has been
erroneously transferred out of a county of proper venue to another county of proper venue,
however, the courts of appeals have split on the appropriate resolution.

 In Lewis v. Exxon Co., U.S.A., 786 S.W.2d 724, 728 (Tex. App.--El Paso 1989,
writ denied), the El Paso Court of Appeals held that it was not harmful error to transfer venue
from a proper county to another proper county. The Houston Court of Appeals for the First
District, however, specifically rejected this approach in Maranatha Temple, Inc. v. Enterprise
Prods. Co., 833 S.W.2d 736 (Tex. App.--Houston [1st Dist.] 1992, writ denied). Concluding that
the question whether it is reversible error to transfer a case from a proper venue county to another
proper county was not answered by the language or legislative history of section 15.064, the
Maranatha court held that such transfer was harmful because it denied the plaintiff his right to file
in any permissible county. Id. at 741.

 The Texas Supreme Court has recently provided guidance on which approach is
required. In Ruiz v. Conoco, Inc., 36 Tex. Sup. Ct. J. 412 (Dec. 31, 1992), the court described
the appropriate standard of review for venue appeals. Quoting at length from one commentator's
review of the legislative history of section 15.064, the court held:



[W]hat is the issue to be determined on appeal under subsection 4(d)(2) [section
15.064(b)]? The issue is not whether the trial court or party erred at the motion
to transfer hearing, as it would be under traditional standards of appellate review. 
The question, therefore, is not whether "venue was or was not properly
determined," such as by insufficiency of the evidence or abuse of discretion. This
traditional standard of appellate review was specifically rejected. Instead, the
express language used for appellate review under subsection 4(d)(2) is, simply,
whether "venue was or was not proper" in the ultimate county of suit. This precise
and unambiguous language statutorily frames the issue on appeal under subsection
4(d)(2). The fact that the issue is not whether "venue was or was not properly
determined," but is whether "venue was or was not proper," is a distinction that
was clearly known to, debated between, and agreed to by all involved in
negotiations. If an appellate point of error is based solely on subsection 4(d)(2),
then a case will be reversed if venue was improper in the ultimate county of suit
and will be affirmed if venue was proper therein.



Id. at 418 (quoting Dan R. Price, New Texas Venue Statute: Legislative History, 15 St. Mary's
L. J. 855, 878 (1984)) (emphasis in original). 

 While the facts in Ruiz involved a trial court's refusal to transfer venue, the
supreme court's analysis necessarily governs cases in which transfer is granted as well as those
in which it is refused: the only question to resolve in venue appeals under section 15.064 is
whether venue was proper in the ultimate county of suit. In addition to adopting the quoted
construction of the venue statute, the court in Ruiz cited Lewis approvingly, indicating an implicit
rejection of the Maranatha approach. Ruiz, 36 Tex. Sup. Ct. J. at 418. Based on our reading
of Ruiz, we conclude that transfer from a county of proper venue to another county of proper
venue is not reversible error. Here, there is no dispute that venue was proper in Blanco County,
the site of the drowning deaths. Accordingly, no reversible error is shown.



REFUSAL TO TRANSFER VENUE


 Plaintiffs next contend that the Blanco County district court erred in failing to
transfer venue to another county because a fair and impartial jury could not be selected in Blanco
County. A trial court has broad discretion in determining whether to grant a change of venue
requested on such grounds. Governing Bd. v. Pannill, 659 S.W.2d 670, 689 (Tex.
App.--Beaumont 1983, writ ref'd n.r.e.). Refusal to transfer venue will not be disturbed absent
a clear abuse of discretion. Id.; Carrasco v. Goatcher, 623 S.W.2d 769, 771 (Tex. App.--El Paso
1981, no writ). A trial court abuses its discretion only when it acts in an unreasonable or
arbitrary manner, or when it acts without reference to any guiding rules and principles. Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).

 In the present case, the trial court conducted a thorough hearing, including four
hours of testimony from ten witnesses. The Department presented four witnesses who testified
that they could be fair and impartial jurors and that a fair trial was possible in Blanco County. 
In addition, two of the Plaintiffs' witnesses indicated, on cross-examination, that a fair and
impartial jury was possible in Blanco County. Given this record, we cannot conclude that the trial
court abused its discretion in overruling the motion to transfer venue.



JURY MISCONDUCT


 Plaintiffs assert several complaints about the conduct of the jury. These allegations
were first raised in Plaintiffs' "Second Motion for New Trial." On motion of the Department,
the trial court struck this second motion on the ground that it was filed without leave of the court
as required by rule 329b of the Rules of Civil Procedure: "One or more amended motions for
new trial may be filed without leave of court before any preceding motion for new trial filed by
the movant is overruled and within thirty days after the judgment or other order complained of
is signed." Tex. R. Civ. P. 329b (emphasis added). Plaintiffs contend the second motion was
properly and timely filed because not only was the first motion for new trial prematurely filed,
the order purporting to overrule it was itself signed by the trial court before the final judgment
was signed. (2) Plaintiffs argue, therefore, that the first motion for new trial was never properly
overruled, thus obviating the need to obtain leave of court to file their second motion for new
trial.

 Although the trial court struck Plaintiffs' second motion for new trial, in which they
first raised the issue of juror misconduct, the court allowed Plaintiffs to put on, in a bill of
exception, all of the testimony they had to support their motion. At oral argument before this
Court, all parties agreed that if the trial court was incorrect in striking the Plaintiffs' second
motion for new trial, this Court should review the juror-misconduct issue as if the trial court had
fully heard and considered the evidence brought forward in the bill of exception and had then
overruled the second motion. We will, therefore, assume without deciding that Plaintiffs' second
motion for new trial was properly and timely filed; nonetheless, we conclude that the motion and
supporting evidence fail to show juror misconduct requiring reversal.

 First, rule 327(a) of the Rules of Civil Procedure requires the trial court to hold
an evidentiary hearing on a claim of jury misconduct only if the motion for new trial in which the
misconduct is asserted is properly supported by affidavit. Here, Plaintiffs supported their second
motion for new trial with affidavits from two jurors, Michael Kelley and Lucinda Robertson, and
from Plaintiffs' counsel, Will Moursund. These affidavits, however, all recount jurors' statements
made during deliberations. Such averments are not proper grounds for a new trial on the basis
of juror misconduct. Rule 327(b) of the Rules of Civil Procedure prohibits such allegations from
consideration:



A juror may not testify as to any matter or statement occurring during the course
of the jury's deliberations or to the effect of anything upon his or any other juror's
mind or emotions as influencing him to assent to or dissent from the verdict
concerning his mental processes in connection therewith, except that a juror may
testify whether any outside influence was improperly brought to bear upon any
juror. Nor may his affidavit or evidence of any statement by him concerning a
matter about which he would be precluded from testifying be received for these
purposes.



Tex. R. Civ. P. 327(b). Under this rule, an affidavit is proper only if it describes "outside
influence" on the jury. As this Court has recently held, "The source of the information must be
one outside the jury; information gathered by a juror and introduced to other jurors, even if the
information was introduced specifically to prejudice the vote, does not constitute `outside
influence.'" Nelson v. Clements, 831 S.W.2d 587, 591 (Tex. App.--Austin 1992, writ denied).

 The affidavits submitted by Plaintiffs do not raise any issue of outside influence. 
They concern jurors' statements to each other during deliberations or, in the case of Moursund's
affidavit, recount statements made by jurors regarding what influenced them to assent to the
verdict. Since this type of evidence is expressly prohibited under rule 327(b), Plaintiffs' second
motion for new trial failed to properly raise the issue of jury misconduct, and the trial court did
not err in refusing to hold an evidentiary hearing on the matter.

 Second, even if the affidavits properly raised the issue, the testimony contained in
the bill of exception fails to show jury misconduct so clearly as to render the trial court's denial
of the second motion for new trial an abuse of discretion. The bulk of the testimony from the four
juror witnesses consists of comments made by jurors in the jury room during deliberations. 
Jurors' comments to other jurors, however improper, do not constitute outside influence. Nelson,
831 S.W.2d at 591. To constitute outside influence, the source of the information must be one
who is outside the jury, i.e., a non-juror, who introduces information to affect the verdict. Baley
v. W/W Interests, Inc., 754 S.W.2d 313, 316 (Tex. App.--Houston [14th Dist.] 1988, writ denied). 
Consequently, none of the testimony recounting juror comments establishes jury misconduct.

 Plaintiffs contend that certain juror discussions outside the jury room constitute
juror misconduct. The only evidence of outside discussions came from juror Lucinda Robertson,
who testified that two male jurors discussed the case with each other while in the men's room. 
This is not juror misconduct. Any conversation regarding the case occurring between jurors is
a part of jury deliberations regardless of the time and place where it occurs. Baley, 754 S.W.2d.
at 316. 

 The only evidence of alleged outside influence involves conversations at a local
restaurant. Robertson, who worked as a waitress at Charles' Restaurant, testified that jurors
occasionally ate there and were within earshot of local residents' comments about the suit. There
was no testimony that any other jurors actually heard these conversations (3) or that the other patrons
intended to influence the verdict. Mere speculation about outside influence does not raise an issue
of jury misconduct. See Lopez v. City Towing Assocs., Inc., 754 S.W.2d 254, 259 (Tex.
App.--San Antonio 1988, writ denied). Even if other jurors actually heard the statements, we
cannot say that overhearing conversations in a diner booth rises to the level of outside influence
constituting jury misconduct.

 Plaintiffs further contend that there was concealed prejudice and bias on the part
of two jurors. In order for false answers given during voir dire to entitle a party to a new trial,
however, there must be concealment by a juror in response to a specific and direct question calling
for disclosure. Soliz v. Saenz, 779 S.W.2d 929, 933 (Tex. App.--Corpus Christi 1989, writ
denied). Catch-all questions do not meet the requirement of specificity. Texaco, Inc. v. Pennzoil
Co., 729 S.W.2d. 768, 851 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.), cert. denied,
485 U.S. 994 (1988). A review of the record reveals that Plaintiffs' voir dire examination lacked
the specificity and directness required for concealment. There were no direct questions posed to
one of the two jurors. The only specific and direct questions posed to the other juror concerned
prior lawsuits and insurance settlements. On this record, Plaintiffs fail to show concealed juror
bias warranting a new trial.

 In a separate point of error, Plaintiffs argue the trial court erred in denying their
motion for new trial because the verdict was not rendered by ten or more jurors. The affidavit
of Michael Kelley contends that he did not support the verdict but signed it because he believed
he was compelled to sign as presiding juror. Plaintiffs waived this point of error, however, by
failing to request a poll of the jury before the verdict was accepted and the jury discharged. See
Dilbeck v. Ideal Bread Co., 562 S.W.2d 563, 565 (Tex. Civ. App.--Texarkana 1978, no writ); see
also Lewis v. Texas Employers' Ins. Ass'n, 246 S.W.2d 599, 600-01 (Tex. 1952).



SUFFICIENCY OF THE EVIDENCE


 Plaintiffs next challenge the sufficiency of the evidence to support the jury's failure
to find proximate cause. They contend the trial court erred in rendering the take-nothing
judgment because the evidence showed as a matter of law that the Department's negligence was
a proximate cause of the deaths; alternatively, they argue that the jury's failure to find proximate
cause was against the great weight and preponderance of the evidence. While these two
challenges require different degrees of scrutiny of the record, we conclude that there is ample
evidence in the record to support the jury's unwillingness to find proximate cause under either
standard of review.

 Plaintiffs had the burden of proof on the issue of proximate cause. In reviewing
an "as a matter of law" point, this Court must first determine if there is any evidence or
reasonable inferences supporting the verdict, while ignoring all evidence and inferences to the
contrary; even if no such supporting evidence is found, we must then examine the entire record
to see if the contrary proposition is established as a matter of law, i.e., so conclusively that
reasonable minds could not differ. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).

 We begin our review by considering the jury's verdict. In response to questions
four and six, the jury found that Wilford and Wilton Wilson were both negligent. In questions
five and seven, the jury found that the Wilsons' own negligence was the proximate cause of their
deaths. In addition, in question ten, the jury found the Wilsons were not fishing on Park
premises. Plaintiffs do not challenge these findings. Unchallenged jury findings are, of course,
binding on appeal. Cf. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986)
(unchallenged findings of fact are entitled to the same weight as a jury verdict and are binding on
an appellate court). These unchallenged findings alone support the trial court's judgment and
preclude reversal. See De Los Santos v. De Los Santos, 794 S.W.2d 528, 529 (Tex.
App.Corpus Christi 1990, no writ). In addition, the cause-in-fact element of proximate cause
"has been said to be a particularly apt question for jury determination." Farley v. M M Cattle
Co., 529 S.W.2d 751, 756 (Tex. 1975). Our review of the record, as more fully set out below,
convinces us that Plaintiffs did not prove as a matter of law that the Department's negligence was
a proximate cause of the Wilsons' deaths.

 In considering a "great weight" argument, a review of the entire record is required. 
We must weigh and consider all the evidence and set aside the judgment only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).

 While there is evidence in the record to support the jury's finding of the
Department's negligence, especially in the operation of the early warning system, it does not
necessarily follow that this negligence was a proximate cause of the Wilsons' deaths. There was
testimony by Thomas Wayne Wilson that the fishing party was already at Hugo Hole when the
alarms would have sounded. Acoustics expert Elmer Hixson testified that even if the alarms had
sounded, the party was too far away to have heard them. The evidence also established that the
group chose to fish in the middle of the river, atop a rock, without life preservers; attempted to
cross one hundred yards of river bed instead of retreating to the closer north shore when the water
began to rise; and was actually fishing outside of Park premises. The record also contains
evidence that the park ranger warned Wes Carlson of the anticipated rise in the river before he
joined the fishing party. Considering this combination of factors, we conclude that the jury's
failure to find the Department's negligence to be a proximate cause of the Wilsons' deaths is not
so against the great weight and preponderance of evidence as to be clearly wrong and unjust.



DEEMED ADMISSIONS


 Finally, Plaintiffs contend that the trial court erred in withdrawing the deemed
admissions of Wilbur Mengers and Francis Ulrich, both of whom were initially named as
defendants but were later non-suited. A deemed admission only applies against the party making
the admission. See Tex. R. Civ. P. 169(2). When Plaintiffs non-suited Mengers and Ulrich on
the day of trial, this issue became moot. The trial court committed no error in refusing to apply
these admissions against the Department.



CONCLUSION


 We overrule all of Plaintiffs' points of error and affirm the judgment of the trial
court.



 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: May 5, 1993

[Publish]

1.   Plaintiff Lila Wilson asserts eleven points of error. However, three of her points,
those regarding improper venue, legal sufficiency, and factual sufficiency, duplicate other
points.
2.   Appellants filed their first motion for new trial on February 1, 1991. On February
7, the trial court conducted a hearing and signed an order denying the motion. On
February 11, the trial court signed the final judgment. Appellants filed their second
motion for new trial on March 8, within thirty days of the signing of the judgment. On
March 29, the trial court heard and granted the Department's motion to strike Plaintiffs'
second motion for new trial.
3.   Juror Robertson contends that despite her best efforts, it was impossible to avoid
hearing the conversations. This does not show juror misconduct in her case, however,
since Robertson did not sign the verdict. These conversations apparently had no effect on
her decision.