L.J. DOUCET and Wife, Pat
Doucet, Appellants,

v.

OWENS–CORNING FIBERGLAS
CORPORATION, Appellee.

No. 09–96–065 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Nov. 13, 1997.

Decided March 26, 1998.

Roxie Huffman Viator, Orange, for appellant.

Paula A. Heirtzler, Bernsen, Jamail & Goodson, Beaumont, William J. Cozort, Bean & Manning, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION ON MOTION FOR REHEARING

STOVER, Justice.

We withdraw our opinion of January 29, 1998, and substitute the following in its place to address a concern raised in appellants' motion for rehearing.

In a suit brought by appellants L.J. Doucet and wife Pat Doucet ("Doucet") against appellee Owens–Corning Fiberglass Corporation ("OCF") for injuries caused by exposure to asbestos, the jury returned a verdict of $100,000 in favor of Doucet. However, because of the contributory negligence finding by the jury and the dollar-for-dollar credit for pretrial settlements, Doucet ultimately received nothing from the judgment. Appellants appeal from the take-nothing judgment rendered against them.

In the first point of error, appellants complain that their constitutional right to a fair and impartial jury was denied because of juror misconduct; they further contend the trial court erred in failing to grant a motion for new trial on that ground. The alleged misconduct involves Juror Elray Bergeaux, who, in filling out his juror information card, checked "no" in his answer to the question inquiring whether he had ever been a party to a lawsuit. According to Doucet, the ju-

ror's answer is false. Claiming the juror made other untruthful responses, Doucet also points to jury voir dire wherein Elray Bergeaux failed to respond affirmatively to a specific question by appellee's counsel asking if there was "anyone on the panel who, either themselves or a family members [sic], has made a claim for asbestos-related injuries[.]" Bergeaux likewise did not respond during voir dire to a question asking "how many people on the panel have personally worked with asbestos-containing products to the best of their knowledge[.]" On appeal, appellants maintain the juror's lack of response is tantamount to a negative answer and, like the answer on the juror information card, is untrue.

The first allegation of misconduct regarding Juror Bergeaux's untruthfulness came in the motion for a new trial.[1] Appellants sought to establish that, in addition to sitting on the jury in the instant case, Bergeaux was also a plaintiff in a personal injury asbestosis suit against OCF. As evidence, appellants attached to their motion for a new trial a copy of Elray Bergeaux's juror information card, as referenced above, showing his address to be 3819 Meeks Dr. No. L 5, Orange, Texas 77630; a copy of a suit filed by Elray Bergeaux and Louwana Bergeaux in 1990 against OCF and others for personal injuries caused by exposure to asbestos (showing OCF as a defendant and showing Bergeaux's wife's name to be Louwanna); a copy of OCF's answer to Bergeaux's suit (showing the same attorney represented OCF in Bergeauxs' suit and in Doucets' suit); and Bergeaux's divorce petition and divorce decree (showing his address to be the same as that on the juror information card and his wife's name to be Louwana). Based upon our review of the evidence attached to appellants' motion for new trial, we conclude Doucet established the Elray Bergeaux who was a juror in the instant case is the same Elray Bergeaux who sued OCF for personal injury

---

1. Appellants initially filed a motion for new trial with a copy of Juror Bergeaux's juror information card attached as evidence, as well as a copy of a suit by Elray Bergeaux and Louwana Bergeaux against OCF, among others. The trial court denied Doucet's motion for new trial. Appellant then timely filed a second motion for new

trial with additional evidence attached. Although appellant did not file a motion requesting permission to file the second motion for new trial, we conclude the trial court, in effect, gave its permission to do so by holding a hearing on the second motion.

in an asbestosis suit. Because of the evidence showing Bergeaux was a litigant in a lawsuit, we further conclude the juror was untruthful on the juror information card and that his failure to respond to specific voir dire questions asking whether he had ever been involved in litigation and whether he had ever worked with asbestos-containing products was, in effect, a "no" answer and, likewise, untruthful.

Misconduct of the jury, under certain circumstances, may deprive a person of a fair trial. Trial by jury is a fundamental right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Additionally, the right is embodied in Article I § 15 of the Texas Constitution:

> Sec. 15. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.

The constitution's reference not only to the right of trial by jury, but also to the purity of the jury, embraces the fundamental principles of impartiality and freedom from bias. Without the purity of the jury, there can be no administration of justice. If jury misconduct—whatever form it may take—is present, the integrity of the jury system is compromised, and a fair trial cannot be had.

Rule 327(a)of the Texas Rules of Civil Procedure pertains to jury misconduct, which, according to the rule, is a proper ground for a motion for new trial.

a. When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the communication made, *or the erroneous or incorrect answer on voir dire examination, be material,* and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that *injury probably resulted* to the complaining party.[2]

TEX.R. CIV. P.327(a) (emphasis added).

To obtain a new trial on the ground of jury misconduct, the complaining party must show (1) that the misconduct occurred; (2) that it was material; and (3) that, based on the record as a whole, the misconduct resulted in harm to them. *Ortiz v. Ford Motor Credit Co.,* 859 S.W.2d 73, 76 (Tex. App.—Corpus Christi 1993, writ denied). "A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion." *Sanchez v. King,* 932 S.W.2d 177, 180 (Tex.App.—El Paso 1996, no writ) (citing *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983)).

As noted above, one of the allegations of jury misconduct in this case is the assertion that Juror Bergeaux was untruthful in his responses during voir dire and on the juror information card.[3] Applying Rule 327(a) to

2. The interpretive commentary following the 1955 amended version of Rule 327 states:

This rule does away with the presumption of prejudice from jury misconduct established by a long line of Texas decisions. Under this Rule a new trial should not be granted because of jury misconduct unless it reasonably appears from the record as a whole that injury probably resulted.

.... Manifestly, the rule of presumed harm, which seems to have been the basis of the Wade, [Texas Employers' Ins. Association v. Wade, Civ.App.1946, 197 S.W.2d 203, error ref. n.r.e.] Cossman [Traders & General Ins. Co. v. Cossman, Civ.App.1948, 212 S.W.2d 865, error ref. n.r.e.] and Kurth [Dallas Ry. & Terminal Co. v. Kurth, Civ.App.1952, 247

S.W.2d 930, error ref. n.r.e.] decisions is no longer the law.

In order that there might be no doubt about its attitude on this subject, the Supreme Court of Texas promulgated an amendment to Rule 327, Tex.R.C.P., effective January 1, 1955. It is there stated in plain language that a reversal may not be ordered unless the information withheld on the voir dire examination was material and further that, in the light of the record as a whole, it must appear that probable injury resulted to the appealing party.

3. Apparently, juror misconduct is becoming a significant problem in courtrooms across the country. We quote the following from a recent article:

the alleged misconduct, as we are required to do, we must determine whether such misconduct was material and, whether, based on the record as a whole, the misconduct probably resulted in harm to appellant.[4]

The determination of the materiality prong in the instant case is not a difficult one. Bergeaux's false answer on the juror information card and his failure to respond to specific voir dire questions which pertained to him are material to the case. The fact that a juror on the panel currently has, or previously had, a suit against one of the parties in the case and failed to be truthful about it is material to the jury selection process. Moreover, the fact that the suit Bergeaux filed against OCF is, like Doucet's suit against OCF, a claim for damages for asbestos-related injuries is likewise material to that process. It is readily apparent the misconduct is material. The more difficult issue in the case is whether injury probably resulted to the complaining party.

In support of his contention of juror misconduct, appellant relies upon *General Accident Fire & Life Assurance Corp. v. Coffman*, 326 S.W.2d 287 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.), which held, under the facts in that case, that a juror's false statement constituted jury misconduct and compromised the integrity of the jury, thereby resulting in reversal and remand:

> [T]he Court erred in not granting it a new trial because of jury misconduct, it being shown that one of the jurors intentionally failed to disclose a previous back injury, and because it was shown that the juror was *influenced* by his own condition. . . .

On the motion for new trial he further testified to the effect:

> . . . .
>
> "Q. Do you feel like he would not be able to do too much work or laboring work? A. Not like he always did.
>
> "Q. You felt like he would not be able to, judging from your own experience, with a back injury? A. Yes, that's right.
>
> "Q. You felt like you had some special knowledge of what a back injury was because you had one? A. Yes, that's right.
>
> "Q. And that influenced your decision as to whether or not Coffman should be awarded some compensation or some money or not? A. Yes, it sure did, because if a man's back is injured, he can't do any hard work."
>
> . . . . We are of the view under this undisputed factual situation that no heavy burden or unreasonable burden should be placed upon defendant to show probable harm.

*Id.* at 291–92 (emphasis added). In *Coffman*, the juror himself testified to being influenced by his lie, thus establishing harm or injury to the complaining party.

The instant case is distinguishable from *Coffman*. Here, we have no affidavit or testimony by Juror Bergeaux, or any other evidence, establishing any bias or prejudice by Bergeaux against appellants or their case. We cannot manufacture injury by supposition or conjecture. The record reveals Juror Bergeaux voted "yes" in answer to the negligence question, and also voted "yes" in awarding $100,000 in damages to appellants. If any inference is to be drawn from the facts

Only a small proportion of the 562 judges responding to a survey reported that they had become convinced in the course of a trial during the past three years that any of ten forms of jury misconduct had occurred. For three kinds of misconduct that are easiest for judges to observe themselves, the picture was different. Seventy-three percent of responding judges reported that venire members had not told the truth during *voir dire* in at least one of the cases they had tried in the last three years; 8 percent responded that venire members were untruthful in many, most, or all cases. Sixty-nine percent of the judges reported cases in which jurors had fallen asleep, and 80 percent of the judges reported that jurors, after being sworn in, had not reported to court or reported late. A higher proportion of state judges than federal judges reported misconduct for almost every category of misconduct.

Misconduct apparently is not often the basis for a successful new trial motion, with only 7 percent of the judges reporting that they had ordered even one new trial because of misconduct during the past three years.

Nancy J. King, *Juror Delinquency in Criminal Trials in America, 1796–1996*, 27 No. 2 The Vanderbilt Lawyer 23, 25 (1997).

---

4. Regrettably, a juror's statement, even though untrue, is not automatically material under the rule, and, even if material may not be harmful.

at hand, it is the inference that Juror Bergeaux would be more favorable to a plaintiff who, like himself, has a suit for an asbestos-related injury against the same defendant. "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.'" *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 950 (Tex.1996) (quoting *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex.1985)). Though we take strong exception to any misconduct of the jury panel, we are nonetheless bound by the constraints of Rule 327(a) and case law interpreting it. We are unable to find support in the record for any alleged injury to appellants as a result of the jury misconduct. Consequently, we conclude the trial court did not abuse its discretion in denying appellants' motion for new trial. Point of error one is overruled.

■ In point of error two Doucet again complains of jury misconduct by pointing to the injection into jury deliberations of Juror Ford's recitation of his wife's [5] version of the definitions of "negligence" and "gross negligence." The transcript of the hearing at which this evidence was adduced reveals that after the first juror testified regarding these allegations, OCF urged the trial court to grant a mistrial on the grounds of the alleged outside influence exerted on the jury. Doucet took the position that the motion for mistrial was premature, because the entire jury panel had not been questioned. The trial court then proceeded to hear the testimony of the remaining eleven jurors. At the conclusion of that testimony, OCF again moved for a mistrial on the grounds of outside influence on the jury. Once more Doucet actively opposed the mistrial motion by maintaining there was no outside influence, and, thus, no jury misconduct. In accordance with appellants' urging, the trial court did not grant OCF's motion, the jury was brought back into the courtroom, and the jury's verdict was read.

■ Contrary to their position at trial, appellants in the motion for new trial and on appeal now maintain there was jury misconduct as a result of Juror Ford's "factually erroneous statement of the law ... on both negligence and gross negligence." Appellants' positions at trial and on appeal are inconsistent. A party cannot encourage the court to take a particular action and then complain on appeal that the trial court erred by taking it. *Metzger v. Sebek*, 892 S.W.2d 20, 42 (Tex.App.—Houston [1st Dist.] 1994, writ denied), *cert. denied*, 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995) (citing *Austin Transp. Study Policy Advisory Comm. v. Sierra Club*, 843 S.W.2d 683, 689 (Tex.App.—Austin 1992, writ denied)). Both Doucet and OCF had knowledge of the details of the alleged misconduct of the jury foreman at the completion of the trial court's hearing of the testimony of the twelve jurors. That hearing was prior to the rendering of the jury verdict in open court. By failing to complain of the alleged acts of misconduct at the time appellant became aware of them and before the verdict was rendered, appellant waived his right to complain of them on appeal. *See Union City Body Co., Inc. v. Ramirez*, 911 S.W.2d 196, 202–3 (Tex.App.—San Antonio 1995, no writ); *Southerland v. Porter*, 336 S.W.2d 841, 846 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.); *White v. Yellow Cab Company*, 286 S.W.2d 237, 239–40 (Tex.Civ.App.—Beaumont 1955, no writ); *Trinity Universal Ins. Co. v. Rose*, 217 S.W.2d 425, 427 (Tex.Civ.App.—Eastland 1949, writ ref. n.r.e.). The trial court did not abuse its discretion in overruling appellants' motion for new trial. We overrule appellants' second point of error.

AFFIRMED.

---

5.  Ford's wife was not a juror in the case.