Ronald JACKSON, Appellant,

v.

GOLDEN EAGLE ARCHERY,
INC., et al., Appellee.

No. 09–96–302 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 29, 1998.

Decided Sept. 17, 1998.

David Gaultney, Mehaffy Weber, Beaumont, for appellant.

Jacqueline Stroh, Benckenstein, Norvell & Nathan, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This appeal involves a personal injury suit. Ronald Jackson sustained injuries as a result of a bow accident occurring on October 5, 1991. The accident occurred while Jackson was using a newly purchased compound bow. The bowstring was drawn back, the bow slipped from Jackson's grip, and the tip of the cable struck him in the right eye. The initial trauma was to Jackson's right eye, socket area, nose, face, and head. The permanent resultant injuries consisted of a misalignment of the eyes, fixed pupil, problems with depth perception, and a visual field deficit. Golden Eagle Archery, Inc., was named as a defendant in the suit. Trial was by jury and Jackson was awarded monetary damages. In his appeal of what he considers an inadequate damage award, Jackson raises eight points of error.

In his seventh point of error, Jackson claims the trial court erred in denying a Motion for New Trial based on jury misconduct. The misconduct he complains of can be grouped into two forms: (1) during voir dire, a juror failed to reveal her bias towards this type of lawsuit, and (2) the jury failed to follow the court's instructions regarding proper jury conduct.

We review jury misconduct under an abuse of discretion standard. Determining whether jury misconduct occurred is a question of fact for the trial court; if there is conflicting evidence on the issue, the trial court's finding must be upheld on appeal. *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 948 (Tex.1996).

To establish jury misconduct, the complaining party must show (1) misconduct occurred, (2) it was material, and (3) based on the record as a whole, it probably resulted in harm. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex.1985); TEX.R. CIV. P. 327(a). Determining the existence of probable injury is a question of law. *Pharo*, 922 S.W.2d at 950. "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more

issues vital to the judgment.'" *Id.,* quoting *Redinger,* 689 S.W.2d at 419.

Review of jury misconduct is governed by Texas Rule of Civil Procedure 327 and Rule of Evidence 606(b). TEX.R. CIV. P. 327 provides:

a. When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX.R. EVID. 606(b) is similar to Rule 327(b):

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Rules 327(b) and 606(b) both preclude jurors from testifying about their deliberations. Under both rules, all testimony, affidavits, and other evidence is excluded from consideration when an issue of jury misconduct is raised unless it is shown that an "outside influence was improperly brought to bear upon any juror." TEX.R. CIV. P. 327(b); TEX.R. EVID. 606(b); *Weaver v. Westchester Fire Ins. Co.,* 739 S.W.2d 23 (Tex.1987). This is a significant change from prior review of jury misconduct cases. Under former Rule 327(b), a juror was permitted to testify as to matters and statements, or "overt acts," occurring during deliberations. *See Flores v. Dosher,* 622 S.W.2d 573, 575 (Tex.1981); *Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex.1980). Presently, however, the only inquiry that can be made is whether an "outside influence" affected the deliberations; all testimony, affidavits, and evidence are limited to this issue. TEX.R. CIV. P. 327(b); TEX.R. EVID. 606(b).

Neither the Rules of Civil Procedure or the Rules of Evidence define "outside influence." Case law, however, has defined the term narrowly. To constitute an outside influence, information must come from outside the jury, i.e., from a non-juror who introduces information to affect the verdict. *Wooten v. S. Pacific Transp. Co.,* 928 S.W.2d 76, 79 (Tex.App.—Houston [14th Dist] 1995, no writ); *Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Since the amendments to Rule 327, comments and statements made by a juror to other jurors during deliberations are internal deliberations and do not amount to an "outside influence." *Chavis v. Director, State Worker's Compensation Div.,* 924 S.W.2d 439, 447 (Tex.App.—Beaumont 1996, no writ).

To preserve error regarding jury misconduct, the complaining party must present evidence proving the misconduct at a hearing on a motion for new trial. TEX.R. CIV. P. 327; TEX.R. CIV. P. 324(b)(1). Jackson moved for a new trial based on alleged jury misconduct and a hearing was held. Supporting the

Motion for New Trial were affidavits from several jurors attesting to the occurrences of misconduct. Darold Frederick, a juror of the case, testified at the hearing. Golden Eagle's trial counsel objected to the testimony of Frederick arguing the affidavits attached to the motion were insufficient to require the court to hear testimony because there was no outside influence affecting the jurors' conduct. The trial court allowed the testimony based on Jackson's constitutional challenge to Rule 327(b).

## FAILURE TO DISCLOSE BIAS OR PREJUDICE DURING VOIR DIRE

An erroneous or incorrect answer given by a potential juror during voir dire examination can constitute grounds for a new trial. *See* Tex.R. Civ. P. 327(a) set forth in full above. Jackson complains that, during voir dire, one of the jurors, Barbara Maxwell, did not disclose her bias against lawsuits and did not disclose that she had been on a previous wrongful death case in which the jury awarded zero damages. He contends the juror's misconduct was material, and, given the record as a whole, the misconduct resulted in harm.

During voir dire, Jackson's trial attorney asked the jury panel if any of them were biased against this type of law suit:

[W]e're in this lawsuit concerning what we contend to be an unreasonably dangerous product that injured an unknowing consumer. And Mr. Jackson has a right to be here. He has a right to ask a Court in this county to render him a fair verdict; but there are people that, for many reasons, of their own, again, are opposed to this type of lawsuit. They just don't think that this ought to be done, that they're opposed to lawsuits. They don't think they ought to happen, that they can't render verdicts in this case, these types of cases, et cetera. If that is the case—of course, you're entitled to your opinions; and I would fight anybody for you to have that opinion. But if that's the case, you should not be on this jury because we are operating within the—within the parameters of the law; and we are doing something that Mr. Jackson has

every right to do and every right to request of a Jefferson County jury.

Is there anyone on this panel that right now would say, "Look, I just don't want to sit on this kind of jury. I need out of here. I don't want to be here. I can't be fair. These type of things bother me. I don't agree with the system, too much stress," whatever; that you want to tell the Judge, tell Judge Shuffield or me and [defense counsel] right now, "I don't want to be here"? If you do, I would ask you please to be honest and do that right now because our system depends on the integrity of our jury system and the integrity of jurors. Is there anyone here that says, "I can't do this"? Anyone?

One panel member did admit that he was biased against lawsuits. Jackson's attorney then asked if there was anyone else. No one responded. Further, Jackson's attorney discussed the type of monetary damages sought and asked the following:

Is there anybody here, by the same token, who would just say, "Look, I just can't do that. I can't—I don't believe in it. I just can't give a verdict that means that somebody is going to have to pay a lot of money"? Anybody here that—again, if you do, now is the time. You owe it to yourself and you owe it to these people and to the Court to be honest about it because we—all we can do is ask you about it, but you have to tell us. Anybody here that could not do that?

There was no response from the jury panel. Trial counsel questioned the panel member who had earlier admitted to being biased. This panel member described how he worked for a grocery store where people frequently sued the store for slip and fall cases. He stated that he didn't "believe in lawsuits." The court asked if he had any preconceived notions that would prevent him from listening to the case and answering specific questions. Trial counsel further stated: "If you can't put [your earlier experiences] aside and consider this case separately and independently from what happened [in other cases], if you can't do that, you need to tell us." The panel member responded: "I can't do it."

Trial counsel then proceeded to ask the panel if any of them had served on a jury. Counsel asked each person who had indicated they had served on a jury if there was anything about their jury service that would affect their decision in this case. Ms. Maxwell responded that she had served on both a civil and criminal case. Trial counsel followed up the inquiry to her jury service:

Q. What kind of case were you on?

A. Both civil and criminal.

Q. All right

A. Civil was a wreck. A man was killed.

Q. Did you—did you reach a verdict in that case?

A. No.

Q. Anything about that case that would keep you from being fair here?

A. No, sir.

At the hearing on the Motion for New Trial, the bias or prejudice of Ms. Maxwell, as well as other forms of jury misconduct discussed below, was alleged as a ground for a new trial. The affidavits and testimony in support of the motion showed that Maxwell's bias toward this type of lawsuit was clearly exhibited to the other jurors during the course of trial and jury deliberations. Frederick's affidavit detailed how, during a recess of the trial, Ms. Maxwell communicated her bias towards the suit:

> [T]he juror Barbara Maxwell told me that she had been on a previous jury in which a family was suing for the death of another family member. Her comment was that the jury she was on awarded nothing, and that she did not believe in "awarding money in stuff like that." She also said, "We are the ones that end up paying for it."

Frederick's testimony further explained Maxwell's attitude. Her comments to Frederick were that the trial was "boring," she didn't "believe in lawsuits like this," and "[w]e are the ones that end up paying for it." The affidavit of Juror Shawn Lynch shows that Ms. Maxwell's bias towards the suit affected the verdict. In her affidavit, Lynch stated Maxwell strongly argued against the plaintiff throughout the deliberations and her view affected the jury's answers especially to questions involving comparative responsibility and damages. Lynch also stated Maxwell had stated this was a frivolous suit.

■■■ Golden Eagle argues the questions asked of Ms. Maxwell at voir dire did not meet specificity requirements. To be entitled to a new trial based on a juror's false answers given during voir dire examination, there must be a concealment by a juror in response to a specific and direct question calling for disclosure. *Soliz v. Saenz*, 779 S.W.2d 929, 933 (Tex.App.—Corpus Christi 1989, writ denied). Viewing the voir dire proceedings as a whole, it is very clear that Jackson's trial counsel was asking the panel members to admit to any bias or prejudices that might prevent them from being fair. Questions were posed to the panel as a whole, directly to specific panel members, and specifically to Ms. Maxwell. We find the questions were sufficiently specific and direct.

■■■ The question of bias was directly posed to Ms. Maxwell. She answered that she could be fair and not let her prior experiences affect her opinion. The affidavits and testimony of other jurors show that she concealed her bias. Mrs. Maxwell was not a competent juror, thus, the whole panel was tainted. Mrs. Maxwell was subject to the extraneous influence of bias, hence, she was not a competent juror. Since she was not a competent juror, the jury was not a proper constitutional tribunal. This principal is codified in Rule 327(a) which provides that a juror's bias or prejudice can amount to misconduct, and such misconduct, if it is material and the complaining party is harmed, can be grounds for a new trial. Rules 327(b) and 606(b), however, prevent testimony regarding the evidence of misconduct if the only evidence is that which emanates from jury deliberations. Here the misconduct of preconceived bias and the failure to disclose under present law does not involve an outside influence. The affidavits and testimony pertaining to statements of Ms. Maxwell were made after jury selection and made during the course of jury deliberations. Under present law, to Jackson's detriment and in violation of his constitutional rights, neither the affidavits nor the testimony of the jurors are ad-

missible under Rules 327(b) or 606(b) to prove jury misconduct.

## FAILURE TO FOLLOW COURT INSTRUCTIONS

In every jury trial the judge is required to give admonitory instructions to the jury regarding proper jury conduct. These admonishments are furnished to the jurors in writing and read aloud to them by the trial judge. TEX.R. CIV. P. 226a. The judge further instructs the jury that Texas law permits proof of any violation of the jury conduct rules and that a juror may be called upon to testify in open court about acts of misconduct.

Jackson contends jury misconduct occurred when the jury violated the instructions given by the court. The violations Jackson focuses upon are: Ms. Maxwell discussed the case with another juror prior to the beginning of jury deliberations; Ms. Maxwell communicated her bias against lawsuits during deliberations; the jury reached a compromise verdict on damages and traded votes on answers to jury questions; and the jury improperly speculated on whether plaintiff had already received money from another source and whether plaintiff had been drinking.

The instructions given by the court admonished the jurors to not discuss the case among themselves until deliberations: "Do not even discuss this case among yourselves until after you have heard all of the evidence, the Court's charge, the attorneys' arguments, and until I have sent you to the jury room to consider your verdict." Additionally, the court advised: "[Y]ou're instructed that you should refrain from even discussing this case among yourselves during breaks or other times." Likewise, the court's instructions advised the jurors to not let bias, prejudice, or sympathy play any part in their deliberations. As discussed above, the affidavit and testimony of Mr. Frederick from the hearing on the Motion for New Trial revealed that Mr. Frederick and Ms. Maxwell had a conversation, during a break prior to deliberations, where Ms. Maxwell revealed her bias towards this type of lawsuit. In addition, during deliberations, the affidavits and testi-

mony in support of the Motion for New Trial showed that Ms. Maxwell communicated her bias numerous times.

The court's instructions specifically advised the jury to not trade answers. The supporting affidavits and testimony for the Motion for New Trial clearly showed that this instruction against trading votes was blatantly disregarded. Although the foreman advised the jurors against it, the jurors traded votes to answers concerning damage issues.

The court instructions also advised the jurors to not consider or discuss anything not represented by the evidence. The affidavits and testimony from the new trial hearing established a violation of this rule also. The jury improperly speculated as to whether Jackson had received a settlement from another party who may have been named as a defendant in the case and also speculated that Jackson may have been drinking alcohol prior to the accident.

■ Generally, a violation of the admonitory instructions given under Rule 226a is to be determined by the requirements of Rule 327. *Soliz*, 779 S.W.2d at 934. However, in applying Rule 327, as determined by prior case law, the failure of a jury to follow a court's admonitory instructions can never amount to grounds for a new trial because such misconduct does not involve an "outside influence." *See, e.g., Chavis*, 924 S.W.2d at 447; *Wooten*, 928 S.W.2d at 76; *Soliz*, 779 S.W.2d at 932.

## THE CONSTITUTIONALITY OF RULE 327

In *Doucet v. Owens–Corning Fiberglas Corp.*, 966 S.W.2d 161 (Tex.App.—Beaumont 1998, writ denied), we expressed our concerns as to the ever increasing lack of veracity of jurors on voir dire; however, the constitutionality of Rule 327(b) was not presented. We now address the conflict of Rule 327(b) with our constitutional mandate that the jury be composed of competent jurors free from bias and prejudice. Rule 327(b) literally makes it impossible to satisfy the constitutional mandate that the purity of the composition of the jury was maintained.

At the new trial hearing, Jackson lodged a constitutional challenge to Rule 327(b) and we now address this question. The amended Rule 327(b) was designed to insulate most of the jury deliberation process from scrutiny with the effect of promoting full discussion during deliberations and reducing juror harassment. *Robinson Elec. Supply Co. v. Cadillac Cable Corp.*, 706 S.W.2d 130, 132 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In achieving this goal, however, the rule goes too far in the wrong direction. The amended rule, although well intentioned, represents "something of a backward step in our continual pursuit of an improved judicial system." *Id.* at 133 (Draughn, J., concurring). If a juror fails to reveal a bias or prejudice towards a matter involved in the suit or a bias towards lawsuits or the legal system in general, even though specifically asked to reveal such opinion during voir dire, the party against whom the bias is directed has no recourse to correct resulting damage. The same result occurs when a jury fails to follow court instructions. The amended rules render the court's instructions virtually meaningless. *See Baker v. Wal–Mart Stores, Inc.*, 727 S.W.2d 53, 56 (Tex.App.—Beaumont 1987, no writ) (Burgess, J., dissenting) ("The efforts of competent lawyers and judges to seat a jury with no preconceived ideas about a case and have it consider only evidence allowed under the rules are rendered meaningless when appellate courts allow jurors to inject other evidence during the deliberations. This deprives the litigants of a fair trial and makes a mockery of the trial judge's instructions."); *Baley*, 754 S.W.2d at 321 (Ellis, J., dissenting) ("By defining *outside influence* in the narrowest of terms, thereby precluding judicial inquiry into blatant and impermissible jury conduct, the majority denies appellants their right to a fair trial and, unwittingly, condones similar violations in the future. The admonitions of the trial court provided in Rule 226a are rendered meaningless. A rule not enforced is not a rule."). The result is that the misconduct, regardless of the severity or the effect on the verdict, remains unchecked. The complaining party can never correct the accruing harm and is left with absolutely no remedy. The end result is a grave injustice.

Trial by jury is a fundamental right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Additionally, the right is embodied in Article I § 15 of the Texas Constitution:

> Sec. 15. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.

■ The constitution's reference not only to the right of trial by jury, but also to the purity of the jury, embraces the fundamental principles of impartiality and freedom from bias. Without the purity of the jury, there can be no administration of justice. The constitution means what it says: a jury composed of competent persons unaffected by bias or prejudice. If jury misconduct—whatever form it may take—is present, the integrity of the jury system is compromised, and a fair trial cannot be had. We find the imposition of Rule 327(b) prevents inquiry into the misconduct which occurred in this case. The rule denies Jackson his right to a fair and impartial jury trial and is in direct contravention of the constitution, and, as such, is unconstitutional. We find jury misconduct occurred, it was material, and based on the record as a whole, it resulted in harm. Jackson did not receive a fair trial. We cannot always have a perfect trial, but there must be a fair trial. We sustain appellant's point of error seven, therefore, we do not address appellant's remaining points of error. We, accordingly, reverse the judgment and remand the cause for another trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

I respectfully dissent. The portion of the majority opinion with which I take issue begins with the following statement:

> In *Doucet v. Owens–Corning Fiberglas Corp.*, 966 S.W.2d 161 (Tex.App.—Beaumont 1998, writ denied), we expressed our concerns as to the ever increasing lack of veracity of jurors on voir dire; however, the constitutionality of Rule 327(b) was not presented. We now address the conflict of Rule 327(b) with our constitutional man-

date that the jury be composed of competent jurors free from bias and prejudice. Rule 327(b) literally makes it impossible to satisfy the constitutional mandate that the purity of the composition of the jury was maintained.

In subsequently holding Rule 327(b) unconstitutional, the majority "burns the house to roast the pig." I will attempt to explain why, when construed properly in light of Rule 327(a), Rule 327(b) is not in fatal conflict with the Texas Constitution. In doing so, I will also show that the trial court did not err in overruling the appellant's motion for new trial. As I appreciate the majority's opinion, it had no quarrel with the trial court's August 14, 1996, ruling contained in a letter sent to each party. The letter stated in part:

> The plaintiff's first grounds [sic] for new trial stems from alleged jury misconduct. In support of this, the plaintiff offered the affidavits of several jurors as well as live testimony of a juror. All of the matters revealed by this evidence pertained to jury deliberations. As such, this evidence was incompetent to establish jury misconduct. Rule 327(b) T.R.C.P.; *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263 (Tex.Civ.[sic] App.—El Paso 1994, writ den'd) (and cases cited therein).

The record before us clearly indicates that the information contained in the affidavits concerning how Juror Maxwell attempted to influence other jurors was taken directly from the deliberation stage of the trial. The jurors had been provided with their written instructions and had been placed in the jury deliberation room when the discussions in question took place. Use of any information taken from the jury's deliberations is expressly prohibited by Rule 327(b). No interpretation of the rule is needed as this violates the exact letter of the rule. I, and apparently the majority, have no problem with this ruling.

However, as to the issue of jury misconduct regarding Juror Maxwell's deliberate failure to reveal her bias toward the type of lawsuit in question, the record before this Court indicates that the trial court recognized that certain portions of the affidavit

and testimony of Juror Darold Frederick could be considered as evidence of Maxwell's voir dire misconduct. As I read Rule 327(a), the following portion of Juror Frederick's affidavit could have been properly considered by the trial court, *notwithstanding* Rule 327(b):

> At a recess during the trial after the testimony of the witness Mulaney, the juror Barbara Maxwell told me that she had been on a previous jury in which a family was suing for the death of another family member. Her comment was that the jury she was on awarded nothing, and that she did not believe in "awarding money in stuff like that". [sic] She also said, "We are the ones that end up paying for it." I reminded her that she had been asked about that by Mr. Smith and she gave no answer.

Clearly, this colloquy between the two jurors took place at a recess while testimony was still being taken during the trial. In my opinion, this was not and never could be considered to have occurred "during the course of the jury's deliberations." Furthermore, Juror Frederick's affidavit quoted above does not even hint at "the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith...." I would be more than willing to join the majority if it chose to expressly condemn cases such as *Baley v. W/W Interests, Inc.*, 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied), which made the following bold pronouncement, (totally unsupported by any authority I might add):

> Any conversation regarding the case occurring between or among jurors is a part of jury deliberations regardless of the time and place where it occurs. To hold otherwise would reinstate the post-trial questioning of jurors under prior law. The present procedural and evidentiary rules restrict a juror's testimony solely to matters of "outside influence improperly brought to bear upon any juror."

Subsequent cases have supported Baley's position regarding "outside influence," as well as the scope of "jury deliberations." *See Mitchell v. Southern Pacific Transp. Co.*, 955

S.W.2d 300, 322 (Tex.App.—San Antonio 1997, no writ); *Wilson v. Texas Parks and Wildlife Dept.*, 853 S.W.2d 825, 831 (Tex. App.—Austin 1993), *rev'd on other grounds*, 886 S.W.2d 259 (Tex.1994).

My humble research has turned up no Texas Supreme Court opinion interpreting the scope of Rule 327(b), and with cases like *Baley* in the books, it is clear to see how use of Rule 327(b) has resulted in "the tail wagging the dog" *vis a vis* Rule 327(a). In my view, they are separate rules and should be read in harmony whenever possible, not in conflict. *See Owens—Illinois, Inc. v. Chatham*, 899 S.W.2d 722, 732 (Tex.App.—Houston 1995 [14th Dist.], writ dism'd). Rule 327(a) explicitly mandates that a trial court "shall hear evidence thereof *from the jury* " on the issue of a juror giving an incorrect or erroneous answer on voir dire. Rule 327(a) is not modified by any reference to 327(b), nor is 327(b) modified by any reference to 327(a).

In the instant case, the trial court apparently recognized a clear distinction between the two rules as is evident in his ruling on the misconduct issue regarding Juror Maxwell's voir dire responses:

> Plaintiff next complains that a certain juror failed to disclose a bias towards lawsuits during the course of voir dire. During the voir dire proceeding, counsel for plaintiff asked the entire jury panel whether any of them, for any reason (identifying several potential reasons including bias against lawsuits), would not want to sit on the jury. While the evidence submitted in support of plaintiff's Motion for New Trial on the basis of jury misconduct would certainly support a conclusion that the juror in question had a bias towards ˙product liability lawsuits, the question posed was a general "catch-all" question which has been held to be insufficient for purposes of new trial. *See Durbin, supra; Soliz v. Saenz*, 779 S.W.2d 929 (Tex. Civ.[sic] App.—Corpus Christi 1989, writ den'd) (and cases cited therein).

This ruling relies on two cases that place the rules in their proper context and apply them harmoniously. As pointed out by the *Soliz*Court, and also recognized in *Durbin:* [1]

> In certain circumstances, failure to disclose biases and prejudices during voir dire examination can amount to jury misconduct *not affected by Rules 327(b) and [Tex.R. Civ. Evid.] 606(b)*. For instance, when a party discovers that a juror lied about a matter which reveals that the juror was clearly biased or prejudiced, this could amount to jury misconduct. *See General Accident Fire and Life Assurance Corp. v. Coffman*, 326 S.W.2d 287, 291–92 (Tex.Civ. App.—Waco 1959, writ ref'd n.r.e.).

*Soliz*, 779 S.W.2d at 933. *See also Durbin*, 871 S.W.2d at 272. (emphasis mine).

In both *Soliz*and *Durbin*, the courts affirmed the respective trial courts' rulings denying the motions for new trial as the lies or misstatements by the jurors were discovered having emanated from inside the juries' deliberations. Again, I have no quarrel with a rule that protects the "sanctity" of the jury's deliberations, so long as it is indeed limited in scope to a time after the jury is given its instructions and commences to deliberate. Cases such as *Baley*apply a construction of Rule 327(b) which is strained to herniating proportions.

And if all of the above were not enough, the majority is flying in the face of the law which provides that in order to challenge a legislative or judicial enactment on constitutional grounds, a party must have suffered some actual or threatened restriction under the statute in question, and must contend that the statute unconstitutionally restricts his rights, not someone else's rights. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex.1995). In the instant case, the trial court's ruling *on the issue of Maxwell's voir dire misconduct* did not involve Rule 327(b) at all as the trial court apparently did consider certain evidence accompanying appellant's motion for new trial. The trial court's ruling was based upon the apparent lack of specificity of the voir dire questions by appellant's trial coun-

---

1. *Soliz v. Saenz*, 779 S.W.2d 929 (Tex.App.—Corpus Christi 1989, writ denied); *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263 (Tex.App.—El Paso 1994, writ denied).

sel to Juror Maxwell which resulted in her misleading, if not false, responses. The majority has simply not shown, at least to my satisfaction, how, *under the record before us,* Rule 327(b) was even implicated in the trial court's decision on the voir dire misconduct issue. I would, therefore, overrule points of error seven and eight, and address the remaining points of error. Because the majority holds otherwise, I must dissent.[2]

---

**2.** The majority fails to note that the jury verdict in this case was 10—2 favoring plaintiff Jackson, and that juror Maxwell voted favorably for plaintiff.