Vicki Lynn **BALEY**, et al., Appellants,

v.

**W/W INTERESTS, INC.,** Appellee.

No. B14–87–00056–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 9, 1988.

Rehearing Denied July 28, 1988.

314

K. Michael Mayes, Conroe, for appellants.

Donald M. Hudgins, Jerry T. Price, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

A suit for wrongful death was brought by decedent's family and the family owned business against the owners and lessee of the establishment where decedent was murdered in the course of an attempted robbery. Prior to trial the defendant/cross-defendant owners, Gerald D. Hines, individually, and d/b/a Gerald D. Hines Interests, and Setec Protection Services, Inc. ("Hines"), settled with the plaintiffs. A jury found that the remaining defendant (lessee W/W Interests, Inc., d/b/a Judge's) was negligent in failing to provide adequate security and lighting. The jury also found that such negligence was not the proximate cause of the decedent's death. The trial court entered a take nothing judgment, denying plaintiffs' motion for judgment nov and its motion for new trial. We affirm.

Fifty-two points of error are urged. In the first fifteen, appellants assert that they were harmed by the material misconduct of the jurors and were therefore entitled to a new trial. Specifically, appellants contend that jurors violated the explicit instructions of the trial court (1) when two jurors, Marilyn Emerich and Renee Madden, visited the scene of the murder and related to other jurors the personal experience and special knowledge each obtained from her visit; (2) when jurors discussed a newspaper article not in evidence; (3) when jurors discussed the case among themselves prior to deliberations; (4) when juror Emerick stated her belief that deceased took a chance in going into a club; (5) when jurors Emerich and Madden each stated that she did not believe in awarding money damages; (6) when jurors discussed a newspaper article, not in evidence, brought into the jury room (7) when juror Madden allowed others to vote for her; and (8) when jurors Emerich and Madden failed to answer honestly questions asked them in voir doir.

The conduct of the jurors is not at issue. Unquestionably, it was improper. The sole issue under these points of error is whether the post-trial testimony of the jurors regarding appellants' allegations is admissible to show that the verdict is not valid. We hold that such evidence is not admissible.

The rules of evidence at the time of the trial and subsequent hearing provided:

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or an evidence of any statement made by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX.R.EVID. 606(b) (Vernon 1986) (emphasis added).

The evidentiary rule must be read together with the procedural rule governing jury misconduct:

**For Jury Misconduct**

a. When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and *may* grant a new trial if such misconduct proved, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any

other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, *except that a juror may testify whether any outside influence was improperly brought to bear upon any juror*. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. TEX.R.CIV.P. 327 (emphasis added).

■ Appellants contend that the evidence is admissible because the misconduct did not occur during the jury's deliberations but it occurred (1) before the charge was read to the jury and therefore before the formal deliberations had begun and (2) on lunch and coffee breaks, which are not a part of the jury's "deliberations." This is not a valid distinction. Any conversation regarding the case occurring between or among jurors is a part of jury deliberations regardless of the time and place where it occurs. To hold otherwise would reinstate the post-trial questioning of jurors under prior law. The present procedural and evidentiary rules restrict a juror's testimony solely to matters of "outside influence improperly brought to bear upon any juror."

■ Alternatively, appellants argue that the testimony fits within the "outside influence" exception. Much of the information about which appellants complain was acquired outside the jury room. "Outside influence" is not defined by the rules, but the term has been construed by the courts. An "outside influence" must emanate from outside the jury and its deliberations. *Robinson Elec. Supply Co. v. Cadillac Cable Corp.*, 706 S.W.2d 130, 132 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 829 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). It does not include all information not in evidence, unknown to the jurors prior to trial, acquired by a juror and communicated to one or more other jurors between the time the jurors received their instructions from the court and the rendition of the verdict. To constitute "outside influence" the source of the information must be one who is outside the jury, *i.e.* a non-juror, who introduces the information to affect the verdict. Information gathered by a juror and introduced to other jurors by that juror—even if it were introduced specifically to prejudice the vote—does not constitute outside influence. The testimony regarding jury misconduct was inadmissible. The trial court did not err in overruling appellants' motion for a new trial. Points of error one through fifteen are overruled.

■ Appellants' fifty-second point of error relates to the hearing on the motion for new trial. It complains that the trial court erred in refusing to file findings of fact and conclusions of law after the hearing although they were requested timely. Rule 296 of the Texas Rules of Civil Procedure, governing the filing of findings by the court, applies to *non*-jury cases. Although there have been instances following a jury trial where the court has entered its additional findings and conclusions, the rules do not require that it do so. It is not reversible error for the court to refuse such a request where, as here, the complaining party suffers no injury. TEX.R.APP.P. 81(b)(1). There was no admissible evidence of jury misconduct. The refusal to file additional findings and conclusions did not prevent the appellants from making a proper presentation of their case to this court. The point is overruled.

Points of error sixteen through twenty-seven complain that the trial court erred in overruling appellants' motion for instructed verdict and motion for judgment nov because the allegations of negligence and proximate cause were established as a matter of law. Special Issue No. 1 inquired as to negligence and proximate cause. The jury answered in the following manner:

| | | Column 1<br>Negligence | Column 2<br>Proximate Cause |
|---|---|---|---|
| a. | Lighting | Yes | No |
| b. | Adequate security | Yes | No |
| c. | Warn | No | |
| d. | Notify police | No | |
| e. | In allowing the black man in question on the premises | No | |

| | Column 1 Negligence | Column 2 Proximate Cause |
|---|---|---|
| f. In not safely removing the black man in question | No | |

In determining points of error based upon a contention that the evidence conclusively establishes a fact issue on which appellants had the burden of proof, the appellate court must disregard all evidence contrary to the finding and consider only that evidence, if any, which would support the judgment. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986). If there is any evidence of probative force which supports the adverse findings, the points must be overruled. *Holley v. Watts,* 629 S.W.2d 694, 696–97 (Tex.1982).

The record shows that as Mr. Baley and two friends were leaving a nightclub called Confetti's, a well dressed black male hit the hood of the automobile in which they were riding and fell in front of the car. The men did not get out of the car but drove on to Judge's, another nightclub across the street. In discussing the incident later at Judge's, the three men agreed that the stranger was trying to feign injury to induce them to pay him damages on the spot. They were unaware that a man matching his description was in Judge's while the Baley party was there. Later that evening as the Baley party left the club and as two valets were holding open the car doors for them, the same black man boldly stepped in front of Mr. Baley and his friends, holding a pistol. The assailant first demanded money, which the men denied they had. He then demanded Mr. Baley's Rolex watch. Mr. Baley unclipped the watch and grabbed for the weapon. The two men struggled. As the black man regained possession of the pistol, Mr. Baley raised his arms. The black man shot him then fled.

■ The surprise assault occurred in full view of as many as twenty witnesses. There was testimony that the area was well lighted, there were lights under the canopy, and the car lights were on. No witness had trouble seeing the assailant or describing him in detail. Mr. Baley's companion testified that the black man had followed them, that he did not seem concerned about robbing them in front of numerous people, and that he acted suddenly. This testimony is evidence of sufficient probative force to support the jury's answer to 2a and 2b that the negligence they had found was not a foreseeable cause of the death of Mr. Baley.

■ Other testimony regarding the employees' perception of the assailant when he was in the restaurant showed that appellees were not negligent in failing to warn, in failing to notify police, or in failing to bar the black man from the premises. His attire was not inappropriate; he was not intoxicated; he made no attempt to conceal himself. Although he remained near the front door where the hostess was stationed, she did not noticed that he was armed. The manager also testified that he did not know the man was armed, nor was he aware of any prior assaults at Judge's. The hostess did not recall any "major incidences or fights" in her six to eight months employment. There had never been a homicide or manslaughter on the premises. Thus, appellants did not establish their allegations of negligence and proximate cause as a matter of law. The trial court did not err in overruling their motions for an instructed verdict and for judgment nov. Points of error sixteen through twenty-seven are overruled.

Points of error twenty-eight, twenty-nine and thirty concern special issues four, five, and six. Appellants argue that the evidence conclusively established affirmative responses to these issues. Special issue number four asked the jury to find that "Judge's allowed the black man in question to remain on their premises at a time when he was armed." The jury answered, "We do not." Special issues five and six, inquiring as to negligence and proximate cause, were conditioned upon an affirmative finding to special issue four and were not answered. There is no evidence that the black man was *un* armed. In fact, the evidence indicates that most probably he was in possession of the pistol while he was in the club. The record shows that only 35 to 40 seconds after the black man left the club, the manager heard the fatal shot. Whether he was armed is not an ultimate

issue in the case and its incorrect answer could not result in harm to appellants. The real thrust of the question is whether appellee's employees knew of the pistol and yet permitted the black man to remain without calling the police or warning other customers of the danger. Both the manager and the hostess deny any knowledge that the man had a pistol. This testimony is some probative evidence to support the jury's failure to find that appellants *allowed* the black man to remain on the premises while armed. The evidence does not conclusively establish the contrary, nor does it establish as a matter of law that such was negligence and the proximate cause of Mr. Baley's death. Points twenty-eight through thirty are overruled.

In points of error thirty-six through forty-eight appellants attack the jury findings of special issues 1, 4, 5, and 6, contending that the jury's failure to find negligence and proximate cause was so against the great weight and preponderance as to shock the conscious, be manifestly unjust, or reflect bias, prejudice or some improper motive. In reviewing these questions of factual sufficiency, we consider *all* the evidence—that which supports and that which contradicts the challenged findings—to determine if appellants' claims are justified. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Much of the evidence has been set out above. Appellants urge additional facts. There was evidence that although the black man and a male companion appeared drunk, they were served liquor. The testimony of the club manager that he did not know the black man was armed was contradicted by the property manager who testified that the morning after the incident, the club manager told him that as the black man and his companion were leaving, one of the two black males pulled his coat back and showed a pistol. The homicide investigator for the Houston police department also testified that the club manager told him that he had observed a handgun under the man's coat. He further testified that the bartender told him that he saw a solid, heavy object under the black man's coat. In spite of this, no employee tried to call the police or warn of the danger. Although 83 police dispatches had been made to the premises during the previous eighteen months, no security was on duty at the time of the assault. The investigating officer, testifying as an expert, stated that had an off-duty officer or security officer seen a weapon on a customer, the customer would have been arrested and never allowed to leave the club and go armed into the valet area. He also testified that the lighting in the valet area was not sufficient to discourage an attacker. Mr. Anthony Vergouven, one of Mr. Baley's companions, also testified that the valet area was "real bad lit."

In addition to that evidence supporting the verdict recited in previous points of error, appellee counters with evidence that the 83 police calls did not refer to 83 separate incidences of criminal activity. The nature of the calls varied and could have included incidences occurring on the street in front of Judge's or in the garage behind the club. Appellee points out that Judge's manager denied that he saw a weapon; the hostess, who was closest to the black men while they were in the club, said she saw no weapon; and the bartender was never called as a witness at trial. Based on the evidence presented, the jury was free to believe that Judge's did not have notice that should have alerted them that a dangerous or threatening situation existed.

The jury's failure to find negligence and proximate cause was not against the great weight and preponderance of the evidence. Points of error thirty-six through forty-eight are overruled.

 Appellants' points of error thirty-one through thirty-five complain of the submission of a definition of proximate cause which included the phrase "unbroken by any new and independent cause" and in further defining "new and independent cause." Appellants contend that because there was no evidence or insufficient evidence to support such definitions, the trial court should have submitted the definition of proximate cause proposed by the appellants. Appellants argue that although the criminal conduct of a third party can be a superseding cause extinguishing liability of

a negligent tortfeasor, the tortfeasor's negligence is not superseded when the criminal conduct is a foreseeable result of the negligence. The murder of Michael Baley, they assert, was not a new and independent cause because it was the foreseeable result of appellee's negligent failure to provide adequate lighting and security. The criteria for determining whether an act is a concurring or a new and independent cause includes, *inter alia,* (i) the fact that the operation of the intervening force is due to a third person's act or to his failure to act; (ii) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion; and (iii) the fact that after the event the act or its consequences appear to have been extraordinary rather than normal. *See Humble Oil & Refining Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968). Reversible error occurs when the question of new and independent cause is raised and the court fails to include it in the charge to the jury. *North Texas Producers Assn. v. Stringer,* 346 S.W.2d 500, 507 (Tex.Civ.App.—Fort Worth 1961, ref'd n.r.e.).

The man closest to Mr. Baley at the time of the assault testified that the robbery and murder happened without warning and that he had no reason to think it was about to happen. The presence of witnesses and the existence of lighting sufficient for all to describe him did not deter him. There was no evidence that a manslaughter or homicide had ever occurred on the premises. This evidence of a sudden violent, criminal act by a third party raised the issue of new and independent cause. Appellee was entitled to have the phrase included in the court's definition of proximate cause and to have the phrase defined for the jury. Points of error thirty-one through thirty-five are overruled.

 In points of error forty-nine and fifty, appellants assert that the trial court erred in admitting irrelevant evidence of earlier events of the evening, such as the encounter with the black man outside of Confetti's and the fact that the Baley party had been to other night clubs. Appellants further complain that even if the evidence were determined to be relevant, its prejudicial effect far outweighs any probative value. Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. CIV. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. CIV. EVID. 403. Evidence of the prior confrontation at Confetti's was clearly critical to appellee's defense of a new and independent cause and theory that the black man had previously selected the members of the Baley party as lucrative targets. Appellee sought to prove that his intent was formed before he encountered the alleged poor lighting or absent security at Judge's. Evidence of the prior confrontation and the visit of the Baley party to other clubs before going to Confetti's and Judge's was a part of the report of the police officer's investigation. The officer was presented as an expert by appellants. He testified that had a security officer been present the black man might have been prevented from entering the valet area and that the lighting in the valet area was not sufficient to discourage an attacker. Appellee was entitled to examine him on all aspects of his investigation to show a chain of events leading to the violent act at Judge's. Intoxication was not made an issue in the trial. Appellee did not present evidence that Mr. Baley and his friends had ordered alcoholic beverages at these clubs. The evidence was relevant and its probative value outweighed any prejudice to appellant. Points of error forty-nine and fifty are overruled.

In their final point of error, appellants contend that the cumulative effect of all the trial court errors mandate a new trial so that justice might be done. There is no cause for reversal. The point is overruled.

The cross points asserted by appellee are conditioned upon a finding of error by the trial court. Because there was none, the crosspoints are abandoned and our treatment of the foregoing issues is dispositive

of the entire appeal. The judgment of the trial court is affirmed.

ELLIS, Justice, dissenting.

I respectfully dissent. The majority opinion declares that the source of "outside influence" must be one other than a juror. It further asserts that information that a juror deliberately gathers from outside the courtroom, after the commencement of the trial, and shares with other jurors, in direct violation of the trial court's oral and written instruction, is not outside influence. This is contrary to logic.

The character of information contained in a newspaper article is the same whether the article is handed to a juror by the bailiff, handed to the juror by a third party, or brought into the jury room by a juror of his own volition. In any case, the information contained in the article is *outside* the record. Similarly, information gathered by a juror's personal inspection of the scene of the incident is brought into the jury room from *outside* the record. To the extent that the evidence in either instance affects another juror's assent to or dissent from the verdict, it is *influence.*

The rule itself does not restrict the term *influence* to third persons. Another form of the word appears in the rule: "A juror may not testify as ... to the effect of anything upon his or any other juror's mind or emotions as *influencing* him to assent or to dissent from the verdict...." As used in this portion of the rule, that which *influences* is that which induces one to form an opinion; it is not restricted to that introduced by third parties.

Case law rather than common sense has brought the majority to the conclusion that *outside influence* must be initiated by a non-juror. The time has come to recognize this is not what the plain language of the rule states and does not conform to the instructions of the trial court. The record reflects that these jurors, as most jurors, were read the following admonition, tracking the language of the Texas Rules of Civil Procedure:

Do not make any investigation about the facts of this case. Occasionally we have

a juror who privately seeks out information about a case on trial. This is improper. All evidence must be presented in open court so that each side may question the witnesses and make proper objection. This avoids a trial based upon *secret evidence.*

....

Do not make personal inspections, observations, investigations, or experiments nor personally view premises, things or articles not produced in court. Do not let anyone else do any of these things for you.

....

Do not seek information contained in law books, dictionaries, public or private records or elsewhere, which is not admitted into evidence.

TEX. R. CIV. P. 226a (emphasis added).

This case is distinguishable from those cited by the majority: *Robinson Elec. Supply Co. v. Cadillac Cable Corp.,* 706 S.W. 2d 130 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Clancy v. Zale Corp.,* 705 S.W.2d 820 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). *Robinson Elec. Supply Co.* and *Clancy* dealt with improper jury discussions concerning special information or experiences acquired by the jurors before they became jurors. Although jurors are instructed not to relate special information (such as what constitutes reasonable attorneys fees or prejudgment interest), the courts have long recognized that we cannot purge each juror of his personal experiences. Here, the influential data was unknown to the jurors until after the trial had commenced. Deliberate effort was required to obtain the information. In defiance of the trial court's instruction, two jurors, Emerich and Madden, conducted their own investigations. They then presented the results of their "fact finding" expeditions to the other jurors. Emerich stated that the lighting in Judge's was not as it had been represented to the jury in the courtroom. After seeing the inside of Judge's, Madden instructed her fellow jurors that additional security at the nightclub would not have made any difference. There could not be a more blatant example

of trial by secret evidence, nor a more flagrant disregard for appellants' right of cross examination. Shortly after these revelations were made to the other jurors, juror Edwards changed her vote on proximate cause to favor the defendants.

A second incident compounded the infraction of the trial court's admonitory instructions. Another juror, Wander, brought a newspaper article into the jury room. The essence of the article was that a trial judge had the right to change a jury verdict without regard for the decision made by the jury. The testimony of the jurors was that as a result of the article the jurors perceived their vote as unimportant. After discussing the article, juror Pinto changed her vote on proximate cause from pro-plaintiff to pro-defendant, thus ending a nine to three jury deadlock.

By defining *outside influence* in the narrowest of terms, thereby precluding judicial inquiry into blatant and impermissible jury conduct, the majority denies appellants their right to a fair trial and, unwittingly, condones similar violations in the future. The admonitions of the trial court provided in Rule 226a are rendered meaningless. A rule not enforced is not a rule. *Robinson Elec. Supply Co.*, 706 S.W.2d at 135 (Draughn, J., dissenting). I would sustain appellants first, second, tenth, and fifteenth points of error and remand the cause for a new trial.