

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0803-11

**THOMAS MCQUARRIE, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
GONZALES COUNTY**

**KELLER, P.J., filed a dissenting opinion in which COCHRAN, J., joined.**

The Court decides that a juror's internet research constituted an "outside influence" for the purpose of determining whether jurors could testify about the matter in a proceeding to challenge the jury's verdict. I disagree, because the text and background of the rule indicate that the phrase "outside influence" carries a narrower meaning than given by the Court today. I would hold that the internet research in this case was not an outside influence because the information did not involve a communication from a person outside the jury. I would further hold that this construction does not violate appellant's constitutional rights.

**A. Admissibility under Rule 606(b)**

In construing the meaning of a rule of evidence, an appellate court "should attempt to effectuate the plain language absent important countervailing considerations."[1] The courts have more flexibility in interpreting court rules than in construing statutes, and a court can look to extratextual factors even absent ambiguity in the language of the rule or absurd results flowing from a plain-meaning interpretation.[2]

The current version of Rule 606(b), effective March 1, 1998, provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.[3]

The language of the rule imposes a broad prohibition against using juror testimony about deliberations to impeach a verdict, but the rule nevertheless has limits. The rule does not prohibit juror testimony about matters or statements occurring before deliberations.[4] The jury deliberation process begins "after the close of the evidence and the jury charge, when the jury retires to weigh the evidence to arrive at a verdict."[5] And the prohibition in the rule applies only to post-verdict

---

[1] *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008).

[2] *Id.*

[3] TEX. R. EVID. 606(b).

[4] *Golden Eagle Archery v. Jackson*, 24 S.W.3d 362, 371 (Tex. 2000).

[5] *Id.*

testimony.[6]  And even with respect to post-verdict testimony about deliberations, the rule contains

two exceptions, the first of which—outside influence—is at issue in this case.

In construing the meaning of the "outside influence" exception,  it is necessary to address the

history of Rule 606(b)'s development.  The rule against using juror testimony to impeach the verdict

originated in England with an opinion by Lord Mansfield in 1785.[7]  By the beginning of the

twentieth century, if not earlier, "the near-universal and firmly established common-law rule in the

United States flatly prohibited the admission of juror testimony to impeach a verdict."[8]  Likewise,

"[e]arly Texas decisions followed the Lord Mansfield rule and flatly prohibited jurors from

impeaching the verdict."[9]

In the early case of *Mattox v. United States*, the United States Supreme Court recognized an

exception to the common-law rule for situations in which an "extraneous influence" was alleged to

have affected the jury.[10]  Early decisions of the Texas Supreme Court created an exception that

allowed jurors to talk about "overt acts of misconduct,"[11] and that exception had some basis in a

discussion from *Mattox*.[12]  The "overt act" rule was criticized, however, "because of the difficulty

---

[6]  *Id.* at 375.

[7]  *Tanner v. United States*, 483 U.S. 107, 117 (1987); *Golden Eagle Archery*, 24 S.W.3d at 367.

[8]  *Tanner*, 483 U.S. at 117.

[9]  *Golden Eagle Archery*, 24 S.W.3d at 367.

[10]  *Tanner*, 483 U.S. at 117; *Mattox v. United States*, 146 U.S. 140, 149 (1892).

[11]  *Golden Eagle Archery*, 24 S.W.3d at 367.

[12]  *See Mattox*, 146 U.S. at 148 (quoting Justice Brewer in *Perry v. Bailey*, 12 Kans. 539, 545 (1874)).

in drawing a line between acts and mental processes."[13]  One commentator claimed that the Texas

rule allowed "a far wider scope of inquiry into the jury's deliberations than any other state."[14]

When the Federal Rules of Evidence were adopted in 1975, they included Rule 606(b), which

provided:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.[15]

As can be seen from its language, the federal rule contained two exceptions to the general rule

prohibiting juror testimony that impeached the verdict: one involving "extraneous prejudicial

information" and the other involving "any outside influence."  The latter exception is contained in

the modern Texas rule, but the former is not.  The report of the United States House Judiciary

Committee explained that the federal rule would permit a juror to testify "as to the influence of

extraneous prejudicial information brought to the jury's attention (e.g. a radio newscast or a

newspaper account) or an outside influence which improperly had been brought to bear upon a juror

---

[13]  *Golden Eagle Archery*, 24 S.W.3d at 368.

[14]  *Id.* (quoting 1 MCCORMICK & RAY, TEXAS LAW OF EVIDENCE § 1612 (Texas Practice 1980)).

[15]  FED. R. EVID. 606(b) (1975) (emphasis added).

(e.g. a threat to the safety of a member of his family)."[16] This passage in the report suggests that the "extraneous prejudicial information" exception was aimed at a juror's acquisition of information that did not involve a communication from a live person to the juror. The Judiciary Committee gave the examples of a juror reading the newspaper or listening to the radio, but other examples could include watching television or, as in the present case, surfing the internet. By contrast, this passage from the report suggests that the "outside influence" exception was aimed at a communication from a live person to the juror about the case.

In 1983, the Texas Supreme Court adopted a version of Rule 606(b) in its rules of civil evidence. The Texas civil rule was identical to the federal rule except that it omitted the "extraneous prejudicial information" exception.[17] The Texas Supreme Court "did not explain the significance of its decision to reject an exception for extraneous prejudicial information."[18] One scholar suggested that the omission signified that the Texas civil rule was more restrictive than its federal counterpart, while another scholar suggested that the federal exceptions for "extraneous prejudicial information" and "outside influences" were largely redundant.[19]

Our state courts of appeals came down on the side of construing the Texas civil rule more restrictively, by construing the "outside influence" exception as not encompassing the types of

---

[16] House Comm. on Judiciary, FED. R. EVID., H.R. Rep. No. 650, 93d Cong., 1st Sess., p. 9 (1973).

[17] *See* TEX. R. CIV. EVID. 606(b) (1997); *Golden Eagle Archery*, 24 S.W.3d at 368.

[18] *Golden Eagle Archery*, 24 S.W.3d at 368.

[19] *Id.* (citing Addison, *Conduct Unbecoming a Jury: Rule 606(b)*, 50 TEX. BAR J. 872, 872 (1987) (more restrictive) and Black, *Article VI: Witnesses*, 20 HOUS. L. REV. 409, 423 (1983) (redundant)).

situations that the House Judiciary Committee suggested were covered by the federal "extraneous prejudicial information" exception.  While the federal rule appears to contemplate and has been construed to permit juror testimony about a juror's reliance upon a newspaper article,[20] the Texas civil rule has been interpreted more restrictively.  Four state courts of appeals—in Houston, San Antonio, and Corpus Christi—have held that the jurors' discussion of a newspaper or magazine article did not constitute an "outside influence."[21]  These courts reasoned that an outside influence "must emanate from outside the jury and its deliberations,"[22] and these courts have expressed a narrow view of what emanated from outside the jury.  According to the Fourteenth Court, in *Baley*, "outside influence . . . does not include all information not in evidence, unknown to the jurors prior to trial, acquired by a juror and communicated to one or more other jurors between the time the jurors received their instructions from the court and the rendition of the verdict."[23]  The *Baley* court further expounded, "Information gathered by a juror and introduced to other jurors by that juror—even if it were introduced specifically to prejudice the vote—does not constitute outside influence."[24]  The views expressed in *Baley* were later echoed in the *Perry* opinion from the First

---

[20]  *See* House Comm. on Judiciary, H.R. Rep. No. 650, p. 9; *Peveto v. Sears*, 807 F.2d 486, 489 (5th Cir. 1987); *United States v. Straach*, 987 F.2d 232, 241 (5th Cir. 1993); *Gall v. Parker*, 231 F.3d 265, 333 (6th Cir. 2000).  *See also Mattox*, 146 U.S. at 150.

[21]  *Baley v. W/W Interests*, 754 S.W.2d 313, 315-16 (Tex. App.–Houston [14th Dist.] 1988, writ denied) (newspaper article); *Mercy Hospital of Laredo v. Rios*, 776 S.W.2d 626, 629-30 (Tex. App.–San Antonio 1989, writ denied) (same); *King v. Bauer*, 767 S.W.2d 197, 198 (Tex. App.–Corpus Christi 1989, writ denied) (same); *Perry v. Safeco Ins. Co.*, 821 S.W.2d 279, 281 (Tex. App.–Houston [1st Dist.] 1991, writ denied) (magazine article).

[22]  *Baley*, 754 S.W.2d at 316; *King*, 767 S.W.2d at 198; *Perry*, 821 S.W.2d at 281.

[23]  *Baley*, 754 S.W.2d at 316.

[24]  *Id.*

Court of Appeals and in opinions from the appellate courts in Corpus Christi, Austin, and El Paso.[25]

Meanwhile, in 1986, we enacted our own rules of evidence, which contained a different version of Rule 606(b). Our Rule 606(b) was internally contradictory—it contained the original language of the federal rule limiting juror testimony, but the federal exceptions were replaced with an exception that swallowed the rule: "except that a juror may testify as to any matter relevant to the validity of the verdict or indictment."[26] In *Buentello v. State*, we gave effect to the "broad, all-encompassing" language of this so-called exception to allow juror testimony on any matter relevant to the validity of the verdict.[27]

But that changed in 1998, with the merger of the civil and criminal rules into a single set of rules of evidence. With one added exception not relevant here, the new (and current) version of Rule 606(b) is the rule from the civil side of our court system. That change was intentional. And though opinions from the courts of appeals are not binding upon us, those opinions that existed at the time we adopted the rule deserve special consideration.

As we have discussed already, those opinions, based largely on *Baley*, construed the Texas civil rule more restrictively than its federal counterpart. Appellant contends that *Baley* is flawed and should be disregarded. He first argues that the Supreme Court of Texas has rejected *Baley*'s definition of "deliberations." That is true, but irrelevant. The definition of "deliberations" was a

---

[25] *Perry*, 821 S.W.2d at 281 (quoting *Baley*); *Soliz v. Saenz*, 779 S.W.2d 929, 931-32 (Tex. App.–Corpus Christi 1989, writ denied); *Nelson v. Clements*, 831 S.W.2d 587, 591 (Tex. App.–Austin 1992, writ denied). *Durbin v. Dal-Briar Corp.*, 871 S.W.2d 263, 272 (Tex. App.–El Paso 1994, writ denied).

[26] *See* TEX. R. CRIM. EVID. 606(b) (1996).

[27] 826 S.W.2d 610, 613 (Tex. Crim. App. 1992).

separate aspect of the discussion in *Baley* from the meaning of "outside influence": first the *Baley* court had to decide whether discussions occurring before the jury charge was read constituted "deliberations," and then, if so, the court had to decide whether an outside influence intruded upon those discussions.[28] The Supreme Court's rejection of *Baley*'s definition of "deliberations" says nothing about its view of *Baley*'s definition of "outside influence." Moreover, though it did not explicitly adopt the specific statements in *Baley* regarding the meaning of "outside influence," the Supreme Court cited *Baley* with approval in connection with its discussion of the "outside influence" issue.[29]

Appellant also argues that we should disregard *Baley* because it is inconsistent with the Texas Supreme Court's statement that "a juror could testify that another juror improperly viewed the scene of the events giving rise to the litigation."[30] Appellant contends that this "holding and the reasoning on which it is based appears to support [his] contention that 'outside influence' may, indeed, include information obtained by a juror and relayed to other jurors." But the Supreme Court's statement was not a holding; it was *dictum*. The *Golden Eagle Archery* case did not involve a juror viewing the scene of the crime, nor did it involve any type of juror investigation.[31] And the Supreme Court did not engage in a reasoned discussion to support its *dictum*; the statement was an offhand illustration of the Supreme Court's conclusion that "[a] juror may testify about jury misconduct provided it does

---

[28] *See Baley*, 754 S.W.2d at 316.

[29] *See Golden Eagle Archery*, 24 S.W.3d at 370.

[30] *See id.*

[31] *See id.*, *passim*.

not require delving into deliberations."[32]

Appellant further contends that *Baley* delivered its holding "out of the blue," that its holding was not supported by the cases it cited, and that its holding was contrary to the language of the rule, as asserted by the dissent.[33] But the *Baley* holding actually had roots in an earlier case from the Fourteenth Court: *Robinson Electric Supply Co. v. Cadillac Cable Corp.*[34] It is true that *Robinson Electric Supply Co.* dealt with a factually distinct situation—the jury's decision to consider and calculate prejudgment interest—that was not alleged to have resulted from any sort of investigation or acquisition of information.[35] But with respect to interpreting identical language in Texas Rule of Civil Procedure 327(b), the court of appeals said:

> Important in interpreting the Rule, however, is the fact that the Texas Supreme Court expressly deleted the proposal by the Rule's drafters in the Liaison Committee that Rule 327(b) also allow testimony on whether "extraneous prejudicial information was improperly brought to the jury's attention." [Citation omitted]. This inquiry is permitted by Federal Rule of Evidence 606(b), and yet the Texas Supreme Court expressly chose to delete this apparently more liberal test for jury misconduct and instead opted for the more stringent "outside influence" test.[36]

In another case, our Court has already commented in  passing that the federal rule "is more expansive than Texas Rule 606(b), because Federal Rule 606(b) permits jurors to testify about

---

[32] *Id.* at 370. Another state's high court has expressed ambivalence on the matter, even under broader language patterned after the federal rule, citing potentially conflicting cases on whether a juror's visit to the crime scene constitutes extraneous prejudicial information. *Watkins v. Taylor Seed Farms*, 295 Ark. 291, 293, 748 S.W.2d 143, 144 (1988).

[33] *See Baley*, 754 S.W.2d at 320-21 (Ellis, J., dissenting).

[34] 706 S.W.2d 130 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.), cited in *Baley*, 754 S.W.2d at 316.

[35] *See Robinson Electric Supply Co.*, 706 S.W.2d at 131-32.

[36] *Id.* at 132-33.

'whether extraneous prejudicial information was brought to the jury's attention.'"[37] Observing the difference between the language of the two rules, the Fifth Circuit has remarked that "[t]he practical effect of this difference is not altogether pellucid" but has noted the argument that "extraneous prejudicial information" is a separate or broader concept than "outside influence."[38] The cases cited in support of that argument involved "situations in which the jurors bring outside information into deliberations themselves" and usually involved "tests or experiments that jurors had conducted themselves to help them evaluate the evidence, juror visits to the scene of the alleged accident, and so on."[39] And since our adoption of the civil version of the rule, the pronouncements made by the Fourteenth Court in *Baley* have been echoed by other courts of appeals, sometimes in criminal cases.[40]

The Court discounts the significant difference in the wording between the federal and Texas versions of Rule 606(b) as well as the historical background in which the Texas rule was adopted. The Court suggests that it can do so because the significance of the difference in language was

---

[37] *Lucero v. State*, 246 S.W.3d 86, 95 n.10 (Tex. Crim. App. 2008).

[38] *Salazar v. Dretke*, 419 F.3d 384, 402 n.30 (5th Cir. 2005)(citing *United States v. Martinez-Moncivais*, 14 F.3d 1030, 1036 n.3 (5th Cir. 1994)). *See Martinez-Moncivais, supra*.

[39] *Martinez-Moncivais, supra*.

[40] *See Franks v. State*, 90 S.W.3d 771, 799 (Tex. App.–Fort Worth 2002, pet. ref'd, untimely filed) ("It has often been held in the civil context that information gathered by a juror and introduced to the other jurors by that juror does not add up to 'outside influence,' even if introduced specifically to prejudice the vote."); *Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.–Texarkana 1999, pet. ref'd) ("While case law has not clearly identified what constitutes an outside influence, it has clearly rejected certain conduct as constituting outside influence . . . . Thus, it has been held that information gathered by a juror and introduced to the other jurors by that juror does not amount to outside influence, even if introduced specifically to prejudice the jurors' votes."); *Williams v. Viswanathan*, 64 S.W.3d 624, 636 (Tex. App.–Amarillo 2001, no pet.).

debated in two law review articles. But whatever dispute or uncertainty there is or may have been among scholars or the federal courts about the meaning of the Texas rule, our own courts of appeals seem to be in agreement: the term "outside influence" does not encompass information gathering by a juror that does not involve communicating with other people. Activities such as reading a newspaper or researching on the internet, while covered by the federal rule, are not covered by the Texas rule. Though at least two out-of-state jurisdictions have held or suggested that internet research constitutes an external matter to which a juror may testify, those jurisdictions have the "extraneous prejudicial information" exception that is in the federal rule.[41] Given the more restrictive nature of the Texas rule, we should conclude, in line with the views held by our state courts of appeals, that internet research does not constitute an outside influence so long as the juror does not receive a communication from a person outside the jury. In the present case, The juror's act of viewing a webpage about the effects of date-rape drugs did not constitute a communication from another person.

Because the juror did not receive a communication from a person outside the jury, I would hold that the juror was not subject to an "outside influence."[42] Because the juror was not subject to

---

[41] *State v. Abdi*, 2012 VT 4, 45 A.3d 29 (2012) (internet research about Somali religion and culture); *Stephenson v. State*, 742 N.E.2d 463, 477 (Ind. 2001) (observing that there was no evidence that the juror was exposed to outside influences, including "researching on the Internet"); *see also Mitchell v. State*, 726 N.E.2d 1228, 1238 (Ind. 2000) (citing Indiana rule as including the "extraneous prejudicial information" exception).

[42] I recognize that communications from a person outside the jury are not limited to face-to-face or contemporaneous contact. A communication can be conveyed over the telephone, by mail, or over the internet. Such communication might include leaving a message on an answering machine, sending a letter, sending an email or instant message, or posting on a message board. But, as with reading a newspaper, viewing a webpage will not ordinarily constitute a communication from another person to the juror. In an unusual case, a webpage could be a communication from another person to a juror if it was created or modified with the purpose of communicating with a specific

an outside influence, her testimony was inadmissible under Rule 606(b).

## B. Constitutionality of Rule 606(b)

In *Tanner v. United States*, the Supreme Court upheld the constitutionality of the federal version of Rule 606(b) when the trial judge excluded juror testimony about one of the jurors being intoxicated.[43] The Court explained that "long-recognized and very substantial concerns"[44] supported protecting jury deliberations from post-verdict scrutiny:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.[45]

The Court further found that a defendant's Sixth Amendment interests in an unimpaired jury were "protected by several aspects of the trial process."[46] First, the suitability of an individual for jury service could be examined in voir dire.[47] Second, the jury can be observed during trial by the court, counsel, and court personnel.[48] Third, "jurors are observable by each other, and may report

juror about a case. On the other hand, a message board posting would *not* be a communication to a juror if made by and for participants who were completely unaware of the juror and the case.

[43] 483 U.S. at 126-27.

[44] *Id.* at 127.

[45] *Id.* at 120-21 (citation and parenthetical omitted).

[46] *Id.* at 127.

[47] *Id.*

[48] *Id.*

inappropriate juror behavior to the court *before* they render a verdict."[49]  Finally, "after the trial a party may seek to impeach the verdict by nonjuror evidence of misconduct."[50]  The Supreme Court characterized "juror testimony as 'one particular kind of evidence inadmissible under the Federal Rules,'" and held that a hearing to include that kind of evidence was unnecessary.[51]

In *Golden Eagle Archery*, the Texas Supreme Court upheld the constitutionality of the current version of Texas Rule of Evidence 606(b) when the trial judge excluded juror testimony about undisclosed juror bias.[52]  Looking to *Tanner* for guidance, the Texas Supreme Court found several applicable protections provided in Texas civil cases.[53]  First, litigants may question potential jurors at voir dire, as well as exercise for-cause and peremptory challenges.[54]  Second, the trial judge can question jurors during trial and "take corrective measures such as instructing the jury, dismissing particular jurors, or declaring a mistrial."[55]  Finally, the Texas Supreme Court observed that Texas rules concerning attorneys' post-trial juror contact are more permissive than the federal rules.[56]

Appellant contends that *Golden Eagle Archery* can be distinguished because there is no constitutional right of confrontation in civil cases.  But jurors are not "witnesses" in a classic sense,

---

[49]  *Id.* (emphasis in original).

[50]  *Id.*

[51]  *Id.*

[52]  24 S.W.3d at 374-75.

[53]  *Id.* at 375.

[54]  *Id.*

[55]  *Id.*

[56]  *Id.*

"with consequent automatic entailment of the confrontation clause, whenever a juror voices any extra-record facts."[57]  Furthermore, *Tanner* was a criminal case, and though it addressed a different constitutional right (to an unimpaired jury), "very substantial concerns" still apply when addressing irresponsible or improper juror behavior that involves jurors considering information that was not presented at trial.  These concerns include (1) keeping jury deliberations private to encourage candid discussion of a case, (2) protecting jurors from post-trial harassment or tampering, and (3) protecting the need for finality.[58]  "As one authority explained, '[t]he question that has vexed courts for years, is how far can they go in opening verdicts to attack on such grounds before the cure becomes worse than the disease.'"[59]  The answer is, not far at all.[60]

In any event, procedural protections exist to help safeguard a defendant's Confrontation-Clause interests.  Potential jurors can be questioned and instructed regarding internet research during voir dire.  The trial judge can instruct the jurors during trial and before deliberations not to engage

---

[57]  *United States ex rel. Owen v. McMann*, 435 F.3d 813, 818 n.5 (2nd Cir. 1970).

[58]  *Golden Eagle Archery*, 24 S.W.3d at 366-67.

[59]  *Id*. at 367 (citing  1 GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 606.02 (Texas Practice 1993)).

[60]  In a concurring opinion in *Golden Eagle Archery*, Justice Hecht would extend the prohibition against juror questioning in civil cases to any questioning that occurs after deliberations have begun.  Although I do not find that sort of extension to be appropriate for criminal cases, the policy reasons he cites certainly apply with even greater force to our more limited rule:"[T]o allow one juror to attack another juror's . . . conduct is too great an encouragement of post-trial trials of the jury" and poses "a significant burden on citizens who give of their time to serve as jurors with little benefit to the process.  Jurors come to decide disputes, not to be drawn into them." 24 S.W.3d at 376 (Hecht, J. concurring).

in internet research.[61]   Further, a juror's use of internet research can be brought to the trial judge's attention before verdict, and the trial judge can take remedial action, which could include issuing further instructions, dismissing a juror, or even declaring a mistrial.   Given the available procedural protections and the weighty interests that favor insulating the jurors' deliberations from scrutiny, I conclude, and would hold, that Texas Rule of Evidence 606(b) does not violate a defendant's constitutional right of confrontation.

I respectfully dissent.

Delivered: October 10, 2012
Publish

---

[61] *See Abdi*, 2012 Vt. at P25, 45 A.3d at 38 ("[I]t may well be time to consider a stronger and more technology specific admonition" regarding research on the internet.).