

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0803-11

**THOMAS MCQUARRIE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### GONZALES COUNTY

HERVEY, J., delivered the opinion of the Court in which MEYERS, JOHNSON, KEASLER, and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion in which COCHRAN, J., joined. COCHRAN, J., filed a dissenting opinion in which KELLER, P.J., and PRICE and WOMACK, JJ., joined.

### O P I N I O N

Appellant, Thomas McQuarrie, was convicted of sexual assault. *See* TEX. PENAL CODE § 22.011(a)(1)(A). The trial court denied Appellant's motion for new trial, which alleged that the jury, after having retired to deliberate, received other evidence not then admitted by the court that was detrimental to Appellant's case. The Thirteenth Court of

Appeals affirmed, holding that the trial court properly excluded the jurors' affidavits and testimony pursuant to Texas Rule of Evidence 606(b) and that Rule 606(b) was constitutional. *McQuarrie v. State*, 2011 Tex. App. LEXIS 2859 (Tex. App.—Corpus Christi Apr. 14, 2011) (mem. op., not designated for publication). We reverse the judgment of the court of appeals.

## I. BACKGROUND

Appellant was indicted for the sexual assault of Lisetta Camarillo.[1] *See* TEX. PENAL CODE § 22.011(a)(1)(A). Appellant and Camarillo had known each other for a number of years and became related by marriage when Appellant's brother married Camarillo's mother. Both Appellant and Camarillo testified that Camarillo was homosexual and not bisexual. Appellant testified that they were very close and hung out every day. He also stated that they had discussed her sexuality, and although they "tried to beat around the bush about it a lot," he believed that Camarillo was so comfortable with him that she wanted to "experiment."

Camarillo testified that she and Appellant "were buddies" who "just hung out." She stated that she never had a romantic interest in him and never flirted with him. She also denied discussing having sex with him. Camarillo additionally testified that she had been dating the same woman for four years, that it had been ten years since she had a

---

[1]The indictment specifically alleged that Appellant did "intentionally and knowingly cause the penetration of the sexual organ of Lisetta Camarillo, by defendant's sexual organ, without the consent of Lisetta Camarillo."

sexual interest in a male, that she had not had a romantic relationship with a male since she was 14 or 15 years old, and that she was a virgin before the sexual intercourse with Appellant. Camarillo described the thought of having sex with a man as "[d]isgusting; nasty; just uncomfortable."

On Friday, April 16, 2006, Camarillo spent all day at her aunt's house with family and friends. She explained that they were barbecuing and drinking. That afternoon, Appellant and his friend came over and invited her to Appellant's parents' house where they were staying.[2] Appellant, his friend, and Camarillo returned to Appellant's house at around 10:00 p.m. Appellant testified that all three individuals drank beer and shots, smoked marijuana, and used cocaine. However, Camarillo testified that she only drank a part of a beer at her aunt's house and then split a marijuana joint at Appellant's house. She explained that Appellant and his friends were drinking and using cocaine, but when the cocaine was offered to her, she declined. Camarillo also stated that the only thing she drank at Appellant's house was a glass of water—at around 12:30 or 1:00 a.m., she had asked Appellant for a drink, and he brought her a glass of water. Camarillo testified that, after she drank the water, she did not feel well and that her "stomach just felt real light." Appellant denied giving her water.

After Camarillo went to sleep, Appellant laid down beside her. According to Appellant, Camarillo put her hand on his stomach, and they started kissing and rubbing

---

[2]Testimony revealed that Appellant's parents had moved out, and the house was vacant, except for a few pieces of furniture including a television and a mattress.

each other.  After about ten minutes of touching, Appellant got up, took his shorts off, and got a condom.  Appellant testified that when he came back, he got on top of Camarillo, pulled her shorts to the side, and had sexual intercourse with her.  He stated that Camarillo was awake and coherent throughout the encounter.  During a later interview with police, Appellant admitted to having sexual intercourse with Camarillo and claimed it was consensual.  He also denied giving Camarillo any date rape drugs.

In contrast, Camarillo testified that when she woke up, she "felt dirty," and she "realized that there was only one cover, and [her] shorts and stuff were pushed over and up, and [she] just didn't feel . . . right."  Camarillo testified that she did not remember anything occurring after she fell asleep, and she neither gave Appellant permission to have sex with her nor voluntarily had sex with Appellant.

On Saturday morning, Camarillo left Appellant's house and went to her aunt's house.  She explained that she "really didn't know what happened," but she "knew something was wrong."  Several witnesses testified to Camarillo's distraught emotions and her explanation of what happened.  At the urging of family and friends, Camarillo eventually reported the sexual assault to the police.

A patrol officer testified that he thought it was "kind of strange" that a female who only drank a little bit of beer and smoked a joint of marijuana would stay asleep during sexual intercourse.  He also testified that it was possible that Camarillo had been drugged and that such drugs go out of the system quickly, making them difficult to test for.

At trial after both sides rested, the charge was read to the jury. The jury had been instructed at the outset of the trial that "[t]he evidence you can consider in this case will only be testimony which you hear in court and any physical exhibits which are offered and admitted into evidence before you." This was reiterated in the jury charge:

> During your deliberations in this case, you must not consider, discuss, or relate any matters not in evidence before you. You should not consider or mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

At the end of the first day of deliberations, the jurors sent a note indicating that they were split nine votes to three in favor of guilt. The court gave the jurors the option of continuing their deliberations that night or returning in the morning. When they decided to resume deliberations in the morning, the court instructed them that "[i]t's very important that you remember my instructions not to discuss this case among yourselves, nor allow anyone else to discuss it with you." The court also emphasized that the next morning, "When there's 12 of you [in the jury room], you can start deliberating. Can't deliberate until there's 12 of you there."

The jurors returned the next morning and deliberated for an hour before finding Appellant guilty. The court assessed Appellant's punishment at four years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Subsequently, Appellant filed a motion for new trial, arguing that he was entitled to a new trial because the jury, after having retired to deliberate, received other evidence not then admitted by the court that was detrimental to his case. *See* Tex. R. App. P.

21.3(f) & (g). At the hearing on the motion, Appellant offered the affidavits of two jurors, Kevin LaFleur and Frank Jiral, who affirmed that a third juror had researched the effects of date rape drugs when the jury was released for the night and that she had relayed that information to the rest of the jury the next morning. LaFleur stated that the third juror, Opal Touchard, informed the jury that the date rape drugs would last up to 72 hours and that the side effects would last for up to a week. Jiral stated that he was still undecided when they returned for deliberations on the second day, and the information provided by the third juror, who he identified as the only woman on the jury, changed his mind. Jiral also stated that the information had changed the mind of the third juror. The trial court determined that the affidavits did not show an outside influence[3] and refused to consider them pursuant to Rule 606(b). Accordingly, the trial court denied the motion for new trial.

## II. COURT OF APPEALS

On direct appeal, Appellant argued, inter alia, that he was deprived of his rights to due process and to an impartial jury "by a juror who conducted independent research on the internet during an overnight recess and conveyed that information to the other jurors during deliberations the next morning." The Thirteenth Court of Appeals disagreed and affirmed the trial court's judgment. *McQuarrie*, 2011 Tex. App. LEXIS 2859.

---

[3]The court explained, "I think my understanding of the case law and -- and the rule is that information received from another juror is not an outside influence, which is the only thing he can testify to. . . . I will not consider [his testimony] on this motion."

The court of appeals held that the trial court properly excluded the jurors' affidavits and testimony under Rule 606(b). *Id.* at *15-17. Relying on its prior decision in *Soliz v. Saenz*, 779 S.W.2d 929 (Tex. App.—Corpus Christi 1989, pet. denied), the court reasoned that the jurors' affidavits showed no evidence of outside influence because the information was gathered by a juror and introduced to the other jurors by that juror. The court of appeals also held that the application of Rule 606(b) was constitutional and did not violate Appellant's right to a fair trial. *McQuarrie*, 2011 Tex. App. LEXIS 2859, at *17-19. The court presumed that the rules approved by the Supreme Court and the Court of Criminal Appeals are constitutional. *Id.* at *17 (citing *Luquis v. State*, 72 S.W.3d 355, 365 (Tex. Crim. App. 2002)).

We granted Appellant's petition for discretionary review to analyze whether the court of appeals violated his federal and state "constitutional trial rights to confrontation and cross-examination by upholding the trial court's exclusion, pursuant to Rule 606(b) Tex. R. Evid., of juror testimony and affidavits offered for purposes of [Appellant's] motion for new trial on the ground that a juror conveyed to other jurors harmful information obtained from her internet research during an overnight break in deliberations."

### III. ARGUMENTS OF THE PARTIES

#### A. Appellant's Arguments

Appellant contends that the juror misconduct in a criminal prosecution in actively

seeking additional information not admitted into evidence cannot and should not be protected under any rule that generally protects the sanctity of the jury's deliberations. He argues that the exclusion of the affidavits reflecting that misconduct denied him of his constitutional rights to confrontation and cross-examination and so infected the entire trial process that due process and due course of law require that he receive a new trial.

Appellant urges this court to re-examine the language relied upon by the court of appeals. He contends that Rule 606(b) was not intended to eliminate post-trial questioning altogether. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370, 372 (Tex. 2000). He also argues that the language relied upon is contrary to the plain language of the rule itself because, in application, it denies the right to a fair trial and condones similar violations in the future. Accordingly, Appellant avers that the juror evidence should be allowed in this instance because the misconduct was not part of deliberations—it occurred at home, during an overnight break. He further claims that the internet has few guarantees of accuracy and provides extraneous information beyond the common knowledge that most jurors are presumed to possess.

### B. State's Arguments

The State responds that information gathered by a juror that is shared with the other jurors does not constitute outside influence, even if it is shared specifically to influence the other jurors' votes. *See Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, pet. ref'd). The State argues that the only juror misconduct

alleged—that a juror went home during deliberations, conducted research on the internet, and discussed the findings with the other jurors—does not constitute an outside influence because the information came from a member of the jury. Therefore, the State avers that the trial court properly excluded the affidavits and testimony under Rule 606(b).

The State further argues that, without competent evidence in the record to show any juror misconduct, Appellant cannot establish any violation of his state or federal constitutional rights. Even so, the State maintains that Rule 606(b) is constitutional because, rather than prohibiting a defendant from proving jury misconduct, it merely limits the method by which a defendant may prove that misconduct.

## IV. ANALYSIS

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *see Salazar*, 38 S.W.3d at 148. A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Holden*, 201 S.W.3d at 763; *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

*Boykin* requires appellate courts to construe a statute in accordance with the plain meaning of its literal text unless the language of the statute is ambiguous or the plain

meaning leads to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). However, *Boykin*'s holding does not apply to our interpretation of the Rules of Evidence. *Henderson v. State*, 962 S.W.2d 544, 551 (Tex. Crim. App. 1997). In construing those rules, we may consider extra-textual sources even absent ambiguity or absurd results. *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008). Still, "we should attempt to effectuate the plain language absent important countervailing considerations. Hence, the plain language is a good place to begin." *Henderson*, 962 S.W.2d at 552.

Texas Rule of Evidence 606(b) prohibits a juror from testifying about "any matter or statement occurring during the jury's deliberations," with two exceptions. Tex. R. Evid. 606(b).[4] A juror may testify about "whether any outside influence was improperly brought to bear upon any juror" or "to rebut a claim that the juror was not qualified to serve." *Id.* The latter exception is not relevant in this case.

Although this Court has acknowledged the general rule that Rule 606(b) permits

---

[4]Texas Rule of Evidence 606(b) provides the following:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

juror testimony relating to improper outside influence,[5] it has never specifically defined what qualifies as an outside influence, or specifically held that any additional evidence that a juror brings into deliberations does not qualify as such. Nonetheless, we have recognized that "[t]he plain language of Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror." *White v. State*, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007); *see also Golden Eagle*, 24 S.W.3d at 370 ("[A]n 'outside influence' originates from sources other than the jurors themselves."). The rule prevents a juror from testifying that the jury discussed improper matters *during deliberation*. *Golden Eagle*, 24 S.W.3d at 372.

The court of appeals concluded that information must be communicated from someone other than a juror in order to be considered an "outside influence," but such a definition is far more narrow than the plain meaning of the rule requires. The court's narrow interpretation undermines Rule 606(b)'s clear exception to reveal outside influences "improperly brought to bear upon any juror" by effectively excluding anything that is communicated to the jury by one of the jurors, regardless of the origin of that information. As the Texas Supreme Court has emphasized, Rule 606(b) was "not intended to eliminate post-trial questioning altogether." *Id.*

In reaching its holding, the court of appeals gave special consideration to its own precedent and the opinions of other intermediate appellate courts. *McQuarrie*, 2011 Tex.

---

[5]*See, e.g., Ocon v. State*, 284 S.W.3d 880, 886 (Tex. Crim. App. 2009); *Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008).

App. LEXIS 2859, at *14-17. That line of cases is based on the following language from

*Baley v. W/W Interests, Inc.*:

> An 'outside influence' must emanate from outside the jury and its
> deliberations. It does not include all information not in evidence, unknown
> to the jurors prior to trial, acquired by a juror and communicated to one or
> more other jurors between the time the jurors received their instructions
> from the court and the rendition of the verdict. To constitute 'outside
> influence' the source of the information must be one who is outside the
> jury, *i.e.*, a non-juror, who introduces the information to affect the verdict.
> Information gathered by a juror and introduced to other jurors by that
> juror—even if it were introduced specifically to prejudice the vote—does
> not constitute outside influence.

*Baley v. W/W Interests, Inc.*, 754 S.W.2d 313, 316 (Tex. App.—Houston [14th] 1988)

(citations omitted), *reversed on other grounds by Golden Eagle*, 24 S.W.3d at 371-72.

But the reasoning in *Baley* and its characterization of "outside influence" is

unworkable. As the dissent in *Baley* originally articulated, "By defining *outside influence*

in the narrowest of terms, thereby precluding judicial inquiry into blatant and

impermissible jury conduct, the majority denies appellants their right to a fair trial and,

unwittingly, condones similar violations in the future." *Id.* at 321 (Ellis, J., dissenting).

The potential for absurd results is clear. To illustrate, under the narrow definition, if a

juror in a DWI trial sneaks out to the defendant's car during the lunch break and sees a

bottle of whiskey on the passenger seat, that is not an outside influence. But if a third

party tells the juror about the whiskey bottle, that would be an outside influence.

Moreover, the history of Rule 606(b) does not require a more narrow construction

of outside influence than our plain-meaning interpretation. "By the beginning of this

century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Tanner v. United State*, 483 U.S. 107, 117 (1987). But exceptions to this rule were recognized in certain situations. For example, the Supreme Court allowed juror testimony in situations in which an "extraneous influence" was alleged to have affected the jury. *See, e.g., Parker v. Gladden*, 385 U.S. 363 (1966); *Mattox v. United States*, 146 U.S. 140 (1892). And the Texas Supreme Court allowed juror testimony about "overt acts of misconduct." *See, e.g., Strange v. Treasure City*, 608 S.W.2d 605 (Tex. 1980); *Trousdale v. Tex. & New Orleans R.R. Co.*, 276 S.W.2d 242 (Tex. 1955)

In 1983, the Texas Supreme Court adopted Rule of Civil Evidence 606(b). The new rule was based on Federal Rule of Evidence 606(b), which prohibited jury testimony to impeach a verdict with two exceptions.[6] The Texas civil rule included the exception permitting a juror to testify on "whether any outside influence was improperly brought to bear upon any juror," but it did not include the other federal exception that allowed a juror to testify about "whether extraneous prejudicial information was improperly brought

---

[6]As adopted in 1975, Federal Rule of Evidence 606(b) provided,

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. . . .*

(Emphasis added).

to the jury's attention." *See Golden Eagle*, 24 S.W.3d at 368. Three years later, this Court adopted its own Rules of Criminal Evidence, but its version of Rule 606(b) proved to be confusing and unworkable due to a "clear internal contradiction." *See Buentello v. State*, 826 S.W.2d 610, 612 (Tex. Crim. App. 1992). So when the civil and criminal rules of evidence merged in 1998, Texas Rule of Evidence 606(b) incorporated the civil version of the rule.[7]

Debate exists as to the significance of the omission of the "extraneous prejudicial information" exception in Texas Rule of Evidence 606(b). The Texas Supreme Court has explained,

> Our Court did not explain the significance of its decision to reject an exception for extraneous prejudicial information [in 1983], leaving scholars to speculate whether the Texas rules are more restrictive than the federal rule. *Compare* Addison, Conduct Unbecoming a Jury: Rule 606(b), 50 Tex. Bar J. 872, 872 (1987) (stating that the Texas rule is more restrictive), *with* Black, *supra,* 20 HOUS. L. REV. at 423 (concluding that the federal exceptions for "extraneous prejudicial information" and "outside influences" are largely redundant).

*Golden Eagle*, 24 S.W.3d at 368; *see also Salazar v. Dretke*, 419 F.3d 384, 420 n.30 (5th Cir. Tex. 2005) ("The practical effect of this difference [between the Federal and state rule] is not altogether pellucid."). Due to this uncertainty, we do not believe that the history of Rule 606(b) dictates that we adopt a more narrow construction of the rule than the plain language suggests.

---

[7]The 1998 rule was amended to also allow juror testimony to rebut a claim that a juror was not qualified to serve. *See* Tex. R. Evid. 606(b) (1998).

Presiding Judge Keller in her dissenting opinion asserts that we "discount" the difference between the Federal and state rule "because the significance of the different in language was debated in two law review articles." We would emphasize, however, that our reference to, and reliance on, a debate "in two law reviews" for support is actually derived from a Texas Supreme Court opinion, which clearly recognized the uncertainty surrounding the language choice of Rule 606(b), and not merely law review articles. *See Golden Eagle*, 24 S.W.3d at 368. Further, although the dissenting opinion also argues that "our courts of appeals seem to be in agreement" regarding the significance of "outside influence," this Court is not bound by the reasoning or results of the decisions of the courts of appeals. *See, e.g.,* Tex. R. App. P. 66.3.

Furthermore, our interpretation of Rule 606(b) is consistent with policy considerations that generally support the common-law rule against the admission of jury testimony to impeach a verdict. *See, e.g., Tanner*, 483 U.S. at 119-20; *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915); *Golden Eagle*, 24 S.W.3d at 367. Jury deliberations must be kept private to encourage jurors to candidly discuss the law and facts,[8] and during an inquiry pursuant to Rule 606(b), such privacy will be maintained because the court may not "delve into deliberations." The court may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny. Similarly, the jury

---

[8]*Golden Eagle*, 24 S.W.3d at 367.

should be protected from post-trial harassment or tampering,[9] and our holding will not result in such undue interference. A Rule 606(b) inquiry is limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience. Also, the risk of harassment can be minimized through other well-established safeguards such as pretrial examination of juror's prejudices and experiences and specific jury instructions informing the jury of prohibited conduct. Our construction has functioned well in the federal courts for years without opening the floodgates to the post-trial questioning of jurors.

Additionally, although there is a need for finality, "the conduct of the jurors . . . may be of such a character as not only to defeat the rights of litigants but it may directly affect the administration of public justice." *McDonald*, 238 U.S. at 266. There are legitimate reasons to prohibit unfettered investigation by the jury in order to maintain confidence in judgments. "A juror must . . . use the law, the evidence, and the trial court's mandates as his ultimate guides in arriving at decisions as to guilt or innocence and as to punishment." *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002); *see Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Such restrictions prevent a juror from acting as a witness against the defendant.

> The Sixth Amendment right to a trial by jury, enforceable against the states as a result of incorporation through the Fourteenth Amendment's due process clause, "implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom

---

[9]*Id.*

> where there is full judicial protection of the defendant's right of
> confrontation, of cross-examination, and of counsel."

*Pyles v. Johnson*, 136 F.3d 986, 992 (5th Cir. 1998) (citations omitted) (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)). Similarly, limiting jury investigation is consistent with our case law that limits a court's consideration of evidence to that in the record. For example, the State must prove each element of an offense beyond a reasonable doubt, and the evidence supporting the sufficiency of the evidence must be contained in the record. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 911-12 (Tex. Crim. App. 2010); *see Hernandez v. State*, 116 S.W.3d 26, 31 (Tex. Crim. App. 2003) (holding that appellate courts cannot act as "independent scientific sleuths to ferret out the appropriate scientific materials" when the State failed to produce any evidence supporting a finding of scientific reliability).

Therefore, we return to our plain-meaning interpretation of outside influence: something originating from a source outside of the jury room and other than from the jurors themselves. The facts of this case fall squarely within our interpretation of Rule 606(b). The internet research occurred outside of the jury room and outside of deliberations—the juror conducted a private investigation at her home during an overnight break. In addition, the information obtained originated from a source on the internet, a source other than the jurors themselves. The internet research constituted an "outside influence." As a result, at the hearing on the motion for new trial, Rule 606(b) would permit the court to question the jury, without delving into deliberations, and to

determine whether the "outside influence" impacted the outcome of the case. *See id.* (explaining that juror testimony is permitted on the issue of juror misconduct "provided such testimony does not require delving into deliberations").

An inquiry into the effects of the juror's private internet investigation does not require us to "delve into deliberations."[10] Trial courts often instruct jurors that they are to consider only the testimony heard in court and the physical exhibits admitted into evidence, that they are not to speak with anyone about the case, and that they are not to visit the scene of the crime. Consistent with these instructions, a trial court should be able to inquire as to whether jurors received such outside information and the impact it had on their verdict without delving into their actual deliberations. This can be done by making an objective determination as to whether the outside influence likely resulted in injury to the complaining party—that is, by limiting the questions asked of the jurors to the nature of the unauthorized information or communication and then conducting an objective analysis to determine whether there is a reasonable possibility that it had a prejudicial effect on the "hypothetical average juror." *See, e.g., Manley v. AmBase Corp.*, 337 F.3d 237, 252 (2d Cir. 2003) ("[C]ourts must apply an 'objective test,' . . . focusing on two

---

[10]The Texas Supreme Court has explained that a "juror may testify about jury misconduct provided it does not require delving into deliberations. For example, a juror could testify that another juror improperly viewed the scene of the events giving rise to the litigation. Likewise, a juror could testify about reasons for disqualifying another juror provided the testifying juror's knowledge was gained independent of deliberations." *Golden Eagle*, 24 S.W.3d at 370 (discussing Texas Rule of Civil Procedure 327(b), which has language parallel to the relevant portions of Rule 606(b)).

factors: (1) 'the nature' of the information or contact at issue, and (2) 'its probable effect on a hypothetical average jury.'"); *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir. 2001) ("In examining for prejudice, we must conduct 'an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror.'"); *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir. 1991) ("The proper procedure therefore is for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly it said, to determine--without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion--whether there is a reasonable possibility that the communication altered their verdict.").

The trial court abused its discretion in excluding, pursuant to Rule 606(b), the jurors' testimony and affidavits offered by Appellant at the hearing on his motion for new trial, and the court of appeals erred to hold otherwise. The internet research conducted by a juror about the effects of date rape drugs constitutes an "outside influence." Therefore, we reverse the judgment of the court of appeals and remand the case to the trial court for a new hearing on Appellant's motion for new trial consistent with this opinion.

Hervey, J.

Delivered: October 10, 2012

Publish